ALBERT M. PECK *vs.* JAMES A. WATERS & another.

A contract of sale of a hundred barrels of whiskey in Philadelphia, to be delivered in Boston, "twenty-five barrels to be shipped by each steamer from Philadelphia, or as fast as that," does not necessarily imply that the delivery is to begin by the first steamer thereafter; nor, if the fact that there are two steamers a week from Philadelphia to Boston is contemplated by the parties, does the contract imply that precisely twenty-five barrels are to be delivered by each steamer.

Proof of a sale of whiskey in Philadelphia to be delivered in Boston does not sustain an allegation of a sale of whiskey in Philadelphia without specification of a place of delivery; nor is an allegation of a sale of the whiskey for a certain sum sustained by proof of its sale for that sum together with payment by the buyer of charges on the whiskey for which the seller was liable. But amendments of the declaration may be allowed to cure such variances after verdict, and even after the argument of exceptions taken at the trial.

CONTRACT. Writ dated March 15, 1869. The declaration contained two counts, the first of which was as follows: " And the plaintiff says that in March 1868 he bought of the defendants two hundred barrels of whiskey, and agreed to pay therefor

at the rate of $1.40 per gallon for one hundred barrels of the same, and $1.45 per gallon for the remaining one hundred barrels; and in consideration thereof the defendants sold said two hundred barrels at said prices to the plaintiff, and agreed to deliver the same to the plaintiff in April and May 1868; and the defendants, in pursuance of the agreement, delivered fifty barrels of the whiskey to the plaintiff, and the plaintiff received the same on account of the agreement, and paid the defendants $1134.45 on account of the agreement; but the defendants have neglected and refused to deliver the balance of said goods, though the plaintiff has been willing to accept and pay for the same, according to the terms of said sale; and the plaintiff says that the goods rose in value in the market between the time of the making of said contract of sale and the time when the goods should have been delivered, so that he lost the profits of the same."

The second count was as follows: " And the plaintiff says that in March 1868 he bought of the defendants one hundred barrels of whiskey, and agreed to pay therefor at the rate of $1.40 per gallon in thirty days after the delivery of the same; and the defendants agreed to sell said whiskey to the plaintiff at said price, and deliver the same within a reasonable time thereafter; and the plaintiff and the defendants in April 1868 agreed to alter and modify said agreement as follows: that the defendants should sell and deliver to the plaintiff one hundred more barrels of whiskey on the same terms, save that the price thereof should be $1.45 per gallon; and the defendants in pursuance of said agreement delivered fifty barrels of said whiskey, and the plaintiff paid $1134.45, on account of said agreement; and the plaintiff has been ready and willing to accept the balance of said goods and pay for the same according to the terms of said agreement, but the defendants have neglected and refused to deliver said balance; and the plaintiff says that the goods rose in value in the market between the time of the making of said contract of sale, and the time when the goods should have been delivered, so that he lost the profits of the same."

There was no allegation that both counts were for the same cause of action.

The answer denied each and every allegation of the declara‑ tion; and alleged that, if any contract between the plaintiff and the defendants was ever broken, it was broken by the fault of the plaintiff, not of the defendants.

Trial in the superior court, before *Rockwell*, J., who allowed a bill of exceptions which referred to the pleadings and then continued as follows : " Upon the trial to the jury the plaintiff testified that on March 14, 1868, he purchased of the defend‑ ants at Boston, through Barnet F. Warner, their agent, one hundred barrels of whiskey at $1.40 a proof gallon thirty days after delivery, to be delivered at his store in Boston, twenty-five barrels thereof to be shipped by each steamer from Philadel‑ phia, or as fast as that; that there were two steamers a week from Philadelphia to Boston, and that the defendants resided in Philadelphia ; and that on or about April 4, 1868, one of the defendants being in Boston, the plaintiff purchased of the de‑ fendants one hundred barrels more whiskey upon the same terms, to be delivered in the same manner, except he was to pay $1.45 a proof gallon for said last named hundred barrels. The plaintiff then offered to testify that after the last named con‑ tract was made, and before any controversy between the parties, the defendant, still being in Boston, offered to pay the plaintiff $400 to be let off from said last named agreement. To this testimony the defendants objected; and the same was admitted by the court. This was all the evidence offered by the plaintiff of the terms of any contract or contracts between him and the defendants, other than that, upon cross-examination, he said that he was to pay the freight on the whiskey from Philadelphia to Boston, and wharfage and cartage in Boston, in addition to the above named prices a gallon. The plaintiff was also allowed by the court to introduce evidence of the advance of the price on whiskey in Boston between March 14 and June 1, 1868, against the objection of the defendants. And the plaintiff rested his case. The defendants then insisted, and requested the court to rule, that there was a fatal variance oetween the declaration and the proof, and that the plaintiff could not recover upon either count in his declaration as it then stood ; which the court de‑ clined to do.

" The defendants then introduced evidence tending to show that the first one hundred barrels were to be delivered to the plaintiff in Philadelphia, on board the steamer, at $1.45 per proof gallon, on a credit on drafts payable in thirty days after sight; that the second one hundred barrels were sold upon the same terms as the first, except that the price was to be $1.40 a proof gallon for the last hundred barrels; and that there was no advance in price on whiskeys in Philadelphia between March 14 and June 1, 1868; and rested.

" The defendants requested the court to instruct the jury that to entitle the plaintiff to recover he must prove the contracts, or some one contract, substantially as he had alleged in his declaration or some count thereof; and that any material variance as to the price, quantity, time or place of delivery, was material, and if any such variance existed the plaintiff could not recover, as his declaration then stood.

" The court declined to instruct the jury in the language prayed for, but did instruct them, among other things not excepted to, as follows: That in order to sustain this action the plaintiff must prove that the defendants agreed to sell the plaintiff two hundred barrels of whiskey, at or about the time stated in the declaration, and for the prices then stated, and that he failed to perform the agreement without a legal excuse for such failure; that the place of delivery was material, and if the whiskey was to be delivered in Philadelphia the plaintiff could not recover; and that, in reference to the difference of statement between the parties as to the price agreed upon, the same did not affect the right of the plaintiff to maintain his action, but would, if the declaration had so alleged, affect the amount of damages to which he would be entitled in case of a breach; that though, if the jury should find that the prices were as stated by the defendants, the plaintiff, if he had so declared, would be entitled to more damages, yet, under the declaration, he could not recover more than he then claimed. The court also instructed the jury that the fact that the plaintiff was to pay freight, wharfage and cartage, in addition to prices specified in his declaration, was not conclusive in establishing Philadelphia as the place of

MARCH 1870. 349

delivery; but that this evidence has to be taken and considered, with the other evidence in the case, upon the question where the whiskey was agreed to be delivered. The jury returned a verdict for the plaintiff, and to all said rulings, instructions and refusals to instruct, the defendants allege exceptions."

*I. W. Richardson*, for the defendants.

*R. M. Morse, Jr., & F. W. Hackett*, for the plaintiff.

WELLS, J. The difficulty in this case is to ascertain with precision what questions are raised by the bill of exceptions. At the close of the plaintiff's testimony in chief, the defendants "insisted, and requested the court to rule, that there was a fatal variance between the declaration and the proof." They except to the refusal of the court so to rule. It does not appear in what particular the variance is alleged to exist; nor that any particular variance was pointed out in the court below. The testimony of the plaintiff, touching any supposed point of variance, is not given minutely, nor specifically in the language of the witness, but in the form of a general statement of its effect. From the bill of exceptions we are unable to distinguish that which expresses the terms used by the parties in making the contract, from that which is mere narration of fact.

This want of definiteness in the bill of exceptions makes it impossible to determine what the contract in proof was, in respect to that particular most important to the decision of the case, in its several aspects, namely, the time within which the delivery was to be completed.

The court below treated the two agreements as one contract, made entire, for the whole two hundred barrels, by the second negotiation and agreement of April 4. We think that construction was justified by the testimony both of the plaintiff and of the defendant. No ruling was asked for, and no question of fact to the contrary of that interpretation was made at the trial. The proof, therefore, in respect to quantity, corresponds with the allegations of either count in the declaration.

As to the time of delivery, the allegation of the first count is, that it was to be delivered in the months of April and May; of the second count, "within a reasonable time." In each case

the allegation is manifestly intended to express the legal effect, or what was supposed to be the effect, of the provisions of the contract. As already suggested, the bill of exceptions is too general and indefinite in its statement of the testimony to enable us to discover what were the provisions made by the terms of the agreement. It does not appear that there had been any deliveries prior to April 4. If not, then, under the renewed and modified agreement, the time for delivery would commence after that date. But how soon after is left uncertain. The provision for a certain limited quantity only by each steamer does not necessarily imply that the delivery was to commence by the first steamer thereafter. That might depend very much upon the situation of the parties and the course of business. The contract being silent upon that point, the term "reasonable time" is supplied by construction of law.

Again, as to the rapidity of delivery after commencing; assuming that the fact stated, that " there were two steamers a week from Philadelphia to Boston," was contemplated by the parties in making the contract, the report is ambiguous as to the limit of quantity to be forwarded by each steamer. As it is stated, the contract permitted, but did not require, that the delivery should be at the rate of twenty-five barrels precisely by each steamer. The qualification, " or as fast as that," imports an option on the part of the defendants. But whether it is an option to deliver the whole at once, or any quantity not less than twenty-five barrels by each steamer; or an option to deliver in such quantities as the defendants should choose, not faster than the rate named, cannot be decisively ascertained from the report. The plaintiff was to pay the purchase money in thirty days after delivery. This consideration might make it for his interest to restrict the delivery to such quantity as suited the demands of his business, or his convenience in regard to payments. If this qualification was intended as a restriction in favor of the plaintiff, it left the obligation of the defendants, within that restriction, to be measured by the legal rule of " reasonable time." We cannot say, as matter of law, that this rule would not extend the time for the entire delivery through the

whole month of May; thus making a correspondence in legal effect between the allegations of the first count and the proof, by means of evidence *ab extra*.   *Cleaves* v. *Lord*, 3 Gray, 66.

As to the place of delivery, the plaintiff testified that it was to be at his store in Boston ; and, upon the instructions of the court, the jury must have so found the contract to be.   This was a variance.   *Middlesex Co.* v. *Osgood*, 4 Gray, 447.   *Lucas* v. *Nichols*, 5 Gray, 309.   Long on Sales, 450.

As to the price or consideration, the rate per gallon is the same in the proof as in the declaration.   But if the contract was for a delivery at the plaintiff's store in Boston, the payment by the plaintiff of the freight and the wharfage and cartage in Boston was a part of the consideration for the contract of the defendants, and should have been alleged.   *Stone* v. *White*, 8 Gray, 589.

Such variances might have been cured by amendment at the trial ; and we may presume that they would have been, if the precise nature of the objections had then been pointed out. The general form of the objection then taken did not direct attention to the particular defects now made apparent.   As against mere formal and technical objections, not affecting the real character of the questions tried and submitted to the jury, we think the verdict should protect the party in whose favor it is rendered, notwithstanding such previous general objection. *Lund* v. *Tyngsboro*, 11 Cush. 563, 568.   But even if not cured by verdict, where the case has been rightly tried and decided upon its merits, an amendment may be allowed after verdict and hearing upon exceptions, and judgment may then be entered thereon, provided it can be done without injustice to the defeated party.   *Nichols* v. *Prince*, 8 Allen, 404.

We do not see that the defendants could have been prejudiced, upon the merits of the case, at the trial, by the failure of the plaintiff to set forth the terms of his contract correctly, according to its legal effect.   The declaration does not set forth, in terms, any place of delivery ; and it does not appear that the defendants were misled thereby, or taken by surprise when the plaintiff undertook to prove a contract to deliver in Boston.

The trial took place in Boston, where the evidence upon **the** question of an advance of price affecting the damages was to be obtained, if anywhere. No delay was asked for in order to procure such evidence. The contest seems to have been rather upon the question of fact whether the contract was for a delivery in Boston or in Philadelphia. The plaintiff put in evidence of an advance of price in Boston; the defendants put in evidence that there was no advance in Philadelphia. The defendants did not ask any ruling or instruction from the court that the contract declared on was a contract to deliver in Philadelphia; but relied upon their own testimony, together with the fact that the plaintiff was to pay freight, wharfage and cartage, to prove that the contract was so in fact. Upon this issue, so tried, the jury have found that the contract was to deliver in Boston; and we think the defendants cannot now complain if the plaintiff is allowed to make his declaration accord with the issue actually tried.

The variance as to the consideration is of still less importance to the rights of the defendants. It does not affect their obligation or the question of damages. It goes rather to the description and identity of the contract. *Stone* v. *White*, 8 Gray, 589.

The other questions in the case, so far as we have been able to apprehend them, are substantially disposed of by the suggestions already made. The instruction "that the fact that the plaintiff was to pay freight, wharfage and cartage, in addition to the prices specified in his declaration, was not conclusive in establishing Philadelphia as the place of delivery," was undoubtedly correct. We see no occasion to comment further upon the instructions given, or those refused.

Upon the case as it stands, it does not appear that the evidence of the advance of prices in Boston, between March 14 and June 1, 1868, was improperly admitted by the court below

The offer of the defendants "to pay the plaintiff $400 to be let off from said last named agreement," was not in the way of an attempt to compromise a disputed claim. There was no question as to the obligation of their contract, and there had then been no breach of it. The offer to purchase a release was

an admission of its value as an executory contract at that time. It does not come within the class of offers made in an attempt to compromise, or buy one's peace from a disputed and doubt ful claim.

Upon the whole case, we are of opinion that the defendants, by their bill of exceptions, do not show such errors in the rulings or instructions of the court below as to entitle them to another trial of the issues of fact to a jury.

The plaintiff may be allowed, therefore, to amend his declaration so as to make the contract set forth in it correspond with that upon which the jury have rendered a verdict in his favor; and thereupon have judgment upon the verdict. We think the terms should be, in this case, that the plaintiff take no costs, and pay the defendants' costs since the verdict. For the above purpose only, the                    *Exceptions are sustained.*