JOHN J. KELLER *vs.* ROBERT WEBB & another.

Suffolk. March 10. — 11, 1879. MORTON & ENDICOTT, JJ., absent.

In an action on a written contract for the purchase of a certain number of casks of a particular kind of black lead at a certain price per pound, oral evidence that the casks were to contain "pure lump lead" is inadmissible.

In an action on a written contract for the purchase of a certain number of casks of black lead to be delivered "in shipments of 100 casks per month," the declaration alleged that the lead was "to be delivered in lots of about 100 casks at different times in the year 1877." *Held*, that there was a variance between the declaration and the proof as to the description of the contract; but that the plaintiff might amend, after verdict in his favor, taking no costs since the trial.

CONTRACT for breach of an agreement to purchase certain black lead. The plaintiff in his declaration alleged that "he made a contract in writing with the defendants, the substance and legal effect of which was that he sold to the defendants and the defendants purchased of him 600 casks of Crown double hammer No. 1 Amalia Mine German black lead, to be delivered in lots of about 100 casks at different times in the year 1877."

After the former decision, reported 125 Mass. 88, the case was tried in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows:

The following letter from the plaintiff to the defendants was in evidence: "When we had the pleasure of your visit a short time since, you stated that you would report, on your return to Boston, in regard to the contract for about 600 casks of Crown double hammer No. 1 Amalia Mine German black lead, for next year. According to last quotations, we could import the lead at $1.70 gold per 100 lbs. in shipments of 100 casks per month (probably from the 1st April next), payable in cash 30 days after arrival of each lot."

The defendants' letter of acceptance was as follows: "Your esteemed favor of the 23d inst. is at hand and contents noted. We should like to make the contract for the 600 casks, Crown double hammer No. 1 Amalia Mine German black lead, at $1.70 gold per 100 pounds."

The defendants objected to this contract, when offered in evi

dence, on the ground that there was variance between it and the declaration. But the judge ruled that there was no variance, and admitted the evidence.

There was contradictory evidence as to whether black lead is usually imported in casks of from 600 to 900 pounds each, or in casks of from 800 to 900 pounds each. Casks generally contain from 50 to 75 pounds of dust, which arises entirely from the attrition of the lumps in the transportation from Germany; and the plaintiff testified that they might contain much more dust than this if the dust were pure, and still answer the description in the contract. One of the defendants testified that the casks which he received contained on the average 233 pounds of dust, which contained an admixture of grit, and that upon this, among other grounds, he refused to accept it; and contended that, at the making of the contract at the visit to the plaintiff referred to in the first letter above quoted, he bargained with the plaintiff for lump lead; and his counsel proposed to ask him the following question: "At the time of the making of the agreement, was anything said between you and the plaintiff about your having pure lump lead in the casks?" But the judge refused to allow this question to be put, as having a tendency to vary the written contract; and the defendants excepted. At the same time the judge offered to allow the defendants' counsel to ask the witness whether the lead was in fact Crown double hammer No. 1 Amalia Mine German black lead, that is, the lead described in the contract; and thereupon the defendants' counsel, not waiving his exception to the above refusal, put this question to the witness, and he answered that it was not.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*J. D. Thomson*, for the defendants.

*S. J. Thomas*, for the plaintiff.

GRAY, C. J. The question proposed by the defendants was rightly excluded, because it sought not only to add to, but to alter, the written contract by parol evidence.

As to the description of the contract, there was a variance between the declaration and the proof; but, as the merits of the case appear to have been fully tried, that variance may and should be allowed to be cured after verdict, by an amendment

of the declaration, the plaintiff taking no costs since the trial. *Cleaves* v. *Lord*, 3 Gray, 66. *Stone* v. *White*, 8 Gray, 589. *Peck* v. *Waters*, 104 Mass. 345.

*Upon such amendment, exceptions overruled.*