# GRAYSON *v.* LYNCH.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 290. Argued May 4, 5, 1896. — Decided May 25, 1896.

When the assignments of error are very numerous, it is practically found necessary to consider but a few of them.

A special finding of facts referred to in acts allowing parties to submit issues of fact in civil cases to be tried and determined by the court is not a mere report of the evidence, but a finding of those ultimate facts upon which the law must determine the rights of the parties.

If the findings of fact in such case be general, only such rulings of the court in the progress of the trial can be reversed as are presented by a bill of exceptions, which bill cannot be used to bring up the whole testimony for review.

In cases brought by appeal from the Supreme Courts of the Territories, this court cannot consider the weight or the sufficiency of the evidence, but only whether the facts found by the court below support the judgment, and whether there was any error in rulings, duly excepted to, upon the admission or rejection of evidence.

The statute of the Territory of New Mexico requiring its Supreme Court to review causes in which a jury has been waived in the same manner and to the same extent as if it had been tried by a jury makes no essential change in the previous practice, and cannot affect the power of this court under the act of April 7, 1874, c. 80, 18 Stat. 27.

If a court can only review cases tried without a jury as it would review cases tried by a jury, it can only review them for errors apparent upon the record, or incorporated in a bill of exceptions.

Where a jury is waived the findings of fact by the court have the same force and effect as the verdict of a jury, and the appellate court will not set aside the findings and order a new trial for the admission of incompetent evidence, if there be other competent evidence to support the conclusion.

No variance between the allegations of a pleading and the proofs offered to sustain it is material unless it be of a character to mislead the opposite party. This rule is applied to sundry assignments of error.

In an action to recover for injuries suffered by reason of disease being communicated to herds of plaintiffs' cattle through negligence of the defendants in handling and managing their herds of cattle, allegations concerning the particular spot where the disease was communicated are not material and may be disregarded — especially if never called to the attention of the trial court.

Witnesses not experts may testify as to symptoms observed by them in the progress of the disease.

The plaintiff being in uncontroverted possession of the land on which his cattle were grazing, it is immaterial in this action whether his possession was lawful.

The objections to the admissibility of the testimony of the chief of the veterinary division of the Department of Agriculture, and of others, as experts have no merit.

The court was not bound to find, upon the facts, that the plaintiffs were guilty of contributory negligence: what care it was necessary for the plaintiffs to take, depended upon circumstances, and was a proper question for the court.

It is to be regretted that the defendants found it necessary to multiply their assignments to such an extent.

THIS was an action originally begun in the District Court for the Third Judicial District, for the county of Dona Ana, New Mexico, by the appellees, constituting the firm of Lynch Bros., against the appellants, who are members of the firm of Grayson & Co., for loss and damage to a herd of cattle by a disease known as "Texas cattle fever," claimed to have been communicated to them by certain cattle owned by defendants, which had been shipped from infected districts in Texas, and permitted to roam over plaintiffs' range. There were two counts in the declaration, alleging the communication of the disease in two different counties, but in other respects the two counts were alike.

The declaration alleged in substance that plaintiffs, being in the peaceable possession of a certain cattle range suitable for pasturage, watering and raising cattle, had pastured and grazed on said lands a large number of meat cattle, which were entirely healthy and free from any contagious or infectious disease, all of which the defendants knew, and that defendants negligently and wilfully, against the remonstrance of the plaintiffs, turned in upon said lands and premises, among plaintiffs' cattle, a large number of their cattle infected with a contagious and fatal disease known as Texas cattle fever. That defendants knew that their cattle were so infected, and were liable to communicate the disease to plaintiffs' cattle; by reason whereof and through the carelessness and negligence of the defendants the disease was communicated to plaintiffs'

cattle, four hundred of which died and the remainder, namely, one hundred head, were rendered worthless in consequence of such disease.

Defendants interposed a general plea of not guilty, and a jury being waived by an agreement in writing, the case was tried by the District Court, which, having heard the evidence and arguments of counsel, found the issue in favor of the plaintiffs, and entered a judgment against the defendants for the sum of $5200 damages, together with their costs.

Thereupon defendants, after unsuccessfully moving for a new trial, prayed an appeal to the Supreme Court of the Territory, which made a finding of facts substantially to the effect that there were in the State of Texas certain districts which were permanently infected with germs of splenetic fever, Texas fever or Texas cattle fever, and that Oak and Bee Counties were a part of such infected districts; that a part of defendants' cattle were shipped by them from Oak and Bee Counties, and unloaded at Hatch station in the Territory of New Mexico, and were from there driven on foot, along the public road, across the range of the plaintiffs to the range of the defendants, adjoining plaintiffs' range, where they were turned loose to graze with other cattle upon defendants' range; that defendants were notified by plaintiffs, and thus had knowledge of the probable existence of such disease in said infected districts and said counties at the time they drove their said cattle from said counties across plaintiffs' range; that defendants' cattle brought with them the germs of an infectious and communicable disease known as splenetic or Texas fever, and communicated such disease to plaintiffs' cattle, either on the public road, on plaintiffs' range or on defendants' range, and plaintiffs' cattle became infected with the germs of such disease, and thereby sickened, and many of them died, and the plaintiffs sustained damage thereby to the amount of $5200; that before defendants' cattle were driven across plaintiffs' range, plaintiffs notified defendants that their cattle would be liable to communicate Texas fever to plaintiffs', and requested them to abstain from driving their cattle across plaintiffs' range; that afterwards and notwithstanding plaintiffs' request defend-

ants drove their said cattle across plaintiffs' range, in the manner heretofore stated, by reason of which said disease became communicated to plaintiffs' cattle.

Upon this finding, the court ordered a judgment to be entered affirming the judgment of the court below, and allowed an appeal to this court.

*Mr. T. B. Catron* for appellants.

*Mr. Samuel M. Arnel* and *Mr. S. B. Newcombe* for appellees.

Mr. Justice Brown delivered the opinion of the court.

In this case, which was tried by the court without a jury, there are fifty-three assignments of error taken to the introduction of much of the testimony and to the finding of the principal facts. As usual, when the assignments are so numerous, it will be necessary to consider but few of them.

1. Thirteen of these assignments are taken in different form to the action of the court in holding that, upon a trial by the court, the admission of improper, incompetent, irrelevant or immaterial evidence was no cause for reversal; that in such case, on appeal, the court will give no weight to such testimony in the determination of such appeal, but will not reverse the judgment because it was admitted, unless it appears that the court in making its decision relied upon such irrelevant evidence; that a finding of facts in a case at law, tried without a jury, is conclusive, where there is sufficient evidence to found it upon, even though the evidence be conflicting; in refusing to pass upon questions of law and fact apparent upon the face of the record, and in refusing to review the cause and pass upon the evidence as upon a hearing *de novo.*

The position of the defendants in this connection is that whatever may be the practice in the Federal courts under the Revised Statutes, or of the courts in other Territories, the laws of New Mexico require the Supreme Court, in passing upon cases tried in the court below without a jury, practically

to retry the case upon the law and facts, as though it were an appeal in equity.

In support of this, our attention is called to three statutes upon the subject of hearings in the Supreme Court, by one of which, (Compiled Laws, sec. 2060,) "trial by jury may be waived by the several parties to any issue of fact in the following cases: (1.) By suffering default by failing to appear at the trial. (2.) By written consent in person or by attorney, filed with the clerk," and by the second of which (sec. 2190) "the Supreme Court, in appeals or writs of error, shall examine the record, and on the facts therein contained alone shall award a new trial, reverse or affirm the judgment of the District Court, or give such other judgment as shall be agreeable to law." There is clearly nothing in these statutes which lays down a different rule from that ordinarily pursued in appellate courts. If the case be tried by jury and reviewed upon writ of error, the power of the appellate court is limited to affirming the judgment or reversing it for errors apparent upon the record, and remanding it for a new trial, as specified in this section. If it be an appeal in equity, the court retries the case upon the evidence in the court below, and gives such judgment as may be agreeable to law. No mention is made in this section of common law cases tried without a jury, and we perceive no necessity for our supplying omission. So far as this class of cases is concerned, they are left to be determined by the legal principles applicable to them in other jurisdictions, and as regards the Federal practice, this court has held in a series of cases that the special findings of facts referred to in the acts allowing parties to submit issues of fact in civil cases to be tried and determined by the court, is not a mere report of the evidence, but a finding of those ultimate facts upon which the law must determine the rights of the parties; and, if the findings of fact be general, only such rulings of the court in the progress of the trial can be reversed as are presented by a bill of exceptions, and that in such cases a bill of exceptions cannot be used to bring up the whole testimony for review any more than in a trial by jury. *Norris* v. *Jackson*, 9 Wall. 125 ; *Kearney* v. *Case*, 12 Wall.

275; *Miller* v. *Life Insurance Co.*, 12 Wall. 285; *Insurance Co.* v. *Folsom*, 18 Wall. 237; *Insurance Co.* v. *Sea*, 21 Wall. 158; *Jennisons* v. *Leonard*, 21 Wall. 302; *Tyng* v. *Grinnell*, 92 U. S. 467; *Insurance Co.* v. *Boon*, 95 U. S. 117; *The Abbotsford*, 98 U. S. 440.

So, too, in cases brought here by appeal from the Supreme Courts of the Territories, we have several times held that we cannot consider the weight or the sufficiency of the evidence, but only whether the facts found by the court below support the judgment, and whether there was any error in rulings, duly excepted to, upon the admission or rejection of evidence. *Idaho & Oregon Land Co.* v. *Bradbury*, 132 U. S. 509; *San Pedro &c. Co.* v. *United States*, 146 U. S. 120; *Smith* v. *Gale*, 144 U. S. 509; *Mammoth Mining Co.* v. *Salt Lake Machine Co.*, 151 U. S. 447.

By the act of April 7, 1874, c. 80, 18 Stat. 27, the appellate jurisdiction of this court, " over the judgments and decrees of the territorial courts in cases of trial by jury, shall be exercised by writ of error, and in all other cases by appeal," with a proviso " that on appeal, instead of the evidence at large, a statement of the facts in the case in the nature of a special verdict, and also the rulings of the court on the admission or rejection of evidence, when excepted to, shall be made and certified by the court below, and transmitted to the Supreme Court, together with a transcript of the proceedings and judgment or decree." It was said in the *Idaho & Oregon Land Co.* v. *Bradbury*, 132 U. S. 509, 513, that the necessary effect of this enactment was that no judgment or decree of the highest court of a Territory could be reviewed by this court in matter of fact, but only in matter of law, or, as was said by Chief Justice Waite in *Hecht* v. *Boughton*, 105 U. S. 235, 236: " We are not to consider the testimony in any case. Upon a writ of error we are confined to the bill of exceptions, or questions of law otherwise presented by the record; and upon an appeal, to the statement of facts and rulings certified by the court below. The facts set forth in the statement, which must come up with the appeal, are conclusive on us. Under these circumstances, the form of proceeding to get a

review is not of so much importance as certainty about what is to be done."

Indeed, no great stress was laid by the plaintiffs in error upon the above section of the Compiled Laws, their principal reliance being upon sec. 4, chap. 1, Laws of 1889, which reads as follows:

"SEC. 4. In all cases now pending in the Supreme Court, or which may hereafter be pending in the Supreme Court, and which may have been tried by the equity side of the court, or which may have been tried by a jury on the common law side of the court, or in which a jury may have been waived, and the cause tried by the court or the judge thereof, it shall be the duty of the Supreme Court to look into all the rulings and decisions of the court which may be apparent upon the records, or which may be incorporated in a bill of exceptions, and pass upon all of them, and upon the errors, if any shall be found therein, in the rulings and decisions of the court below, grant a new trial, or render such other judgment as may be right and just, and in accordance with law; and said Supreme Court shall not decline to pass upon any question of law or fact which may appear in the record, either upon the face of the record or in the bill of exceptions, because the cause was tried by the court or by the judge thereof without a jury, but shall review said cause in the same manner and to the same extent as if it had been tried by a jury."

By this statute it is made the duty of the Supreme Court of the Territory to look into and pass upon all the rulings and decisions of the court below, which may be apparent upon the record, or which may be incorporated into a bill of exceptions, and, if any error be found, grant a new trial or render such other judgment as may be right and just and in accordance with law. And the Supreme Court must not decline so to do because the case was tried by the court without a jury, but must review said cause *in the same manner and to the same extent as if it had been tried by a jury.*

It is difficult to perceive wherein this statute makes any essential change in the previous practice, or even if it did, how it could affect the power of this court under the statute

of 1874, above cited. It certainly does not, in terms, require that the court shall rehear the case upon the testimony, as if it were an appeal in equity, but limits its powers of review to such questions as are apparent upon the record, or incorporated in a bill of exceptions. And in cases where the cause is tried by the court without a jury it can only review it in the same manner, and to the extent, as if it had been tried by a jury. Now the Seventh Amendment to the Constitution expressly provides that no fact tried by a jury shall be otherwise reëxamined in any court of the United States than according to the rules of the common law, and in *Parsons* v. *Bedford*, 3 Pet. 433, 448, it was said that "the only modes known to the common law to reëxamine such facts are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable, or the award of a *venire facias de novo* by an appellate court, for some error of law which intervened in the proceedings." See, also, *Lincoln* v. *Power*, 151 U. S. 436, 438; *Railroad Company* v. *Fraloff*, 100 U. S. 24, 31.

The seventeenth section of the act creating New Mexico a Territory, act of September 9, 1850, c. 49, 9 Stat. 446, 452, provides "that the Constitution, and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said Territory of New Mexico as elsewhere within the United States." It would seem, then, to be entirely clear that, if a court can only review cases tried without a jury, as it would review cases tried by a jury, it can only review them for errors apparent upon the record, or incorporated in a bill of exceptions. If the statute had said that the Supreme Court should review the cause in the same manner and to the same extent as if it were a suit in equity, there would be room to contend that the case should be retried upon the testimony, although even in such case the power of this court would be limited by the act of 1874. But if this power be limited to a review in the same manner and to the same extent as if the case had been tried by jury, its powers are only such as could be exercised upon a writ of error.

We think there is nothing in this statute to take this case out of the general rule, so frequently announced, that in cases where a jury is waived, the findings of fact by the court have the same force and effect as the verdict of a jury, and that the appellate court will not set aside the findings and order a new trial, for the admission of incompetent evidence, if there be other competent evidence to support the conclusion. The evident purpose of Compiled Laws, sec. 2060, was to give to litigants the option of having their causes tried by a jury or by the court, and we think there is nothing in these statutes to indicate that the findings of the court were not intended to have the same force and effect as a special verdict of a jury, and that, where there is any testimony to support such findings, the power of the appellate court is limited to determine whether the facts so found are sufficient to support the judgment.

2. Ten assignments are addressed to questions of variance between the declaration and the facts, as specifically found by the court.

(a) The first of these questions relates to the allegation in the declaration that the disease of which the plaintiffs' cattle died, and which was communicated by the defendants' cattle, was known as "Texas cattle fever," whereas the finding of the court was that plaintiffs' cattle died of "Texas fever." In other portions of the finding, however, the disease is spoken of as commonly called splenetic fever, Southern cattle fever, Texas fever or Texas cattle fever, and it would appear that it was known by all these names, although the witnesses spoke of it generally as Texas fever. Assuming that to be its proper designation, defendants could not possibly have been misled, since the introduction of the word "cattle" was evidently intended to indicate merely that it was a fever originating. in Texas, and prevailing among cattle. While cases may doubtless be found to the effect that descriptive allegations of this kind must be proved with great strictness, the tendency of modern authorities is to hold that "no variance between the allegations of a pleading and the proofs offered to sustain it, shall be deemed material, unless it be of a character to

mislead the opposite party in maintaining his action or defence on the merits." *Nash* v. *Towne*, 5 Wall. 689, 698; *Robbins* v. *Chicago City*, 4 Wall. 657; *Catlin* v. *Gunter*, 11 N. Y. 368.

(*b*) A variance is also claimed between the allegation that the disease was a "contagious" one, and the finding of the court that Texas fever is not communicated by contact, but is an "infectious" disease. There is doubtless a technical distinction between the two in the fact that a contagious disease is communicable by contact, or by bodily exhalation, while an infectious disease presupposes a cause acting by hidden influences, like the miasma of prison ships or marshes, etc., or through the pollution of water or the atmosphere, or from the various ejections from animals. The word "contagious," however, is often used in a similar sense of pestilential or poisonous, and is not strictly confined to influences emanating directly from the body. As applied to Texas fever the difference would be that if the word were strictly construed, it would follow that the disease must be communicated directly from one animal to another, while if it were infectious it would be communicated by cattle carrying the germs of the disease from the infected district, and depositing the same upon the range and waters occupied by other cattle susceptible to the infection, so that they would become infected therefrom. This was the finding of the court with respect to the disease in question. The difference is quite immaterial in this case, however, as the allegation of the second count is that plaintiffs' cattle were healthy, and were " especially free from a certain contagious, noxious, dangerous, infectious and fatal disease commonly known as the Texas cattle fever;" that with knowledge of this fact defendants turned upon plaintiffs' land and premises their own cattle, which were "infected with a noxious, dangerous and fatal disease, commonly known as the Texas cattle fever." And elsewhere defendants' cattle are spoken of as infected with " the said contagious disease," which they communicated to plaintiffs' cattle. It is evident that the words "infectious" and "contagious" were not used in any technical sense, or with any intention of averring that plaintiffs' cattle became ill from a contagious, as distinguished from

an infectious, disease ; and that, reasonably construed, it was only intended to aver that defendants' cattle were afflicted with the Texas cattle fever, and that by the negligence of the defendants they communicated it to the plaintiffs' cattle. The general words "contagious," "noxious," "dangerous," "infectious" and "fatal" are evidently intended to be limited by the specific words "Texas cattle fever," and not to raise a medical question whether Texas cattle fever is, strictly speaking, contagious or infectious.

(c) There is also an allegation in the second count that the plaintiffs kept and grazed their cattle on certain lands of which they were possessed in the county of Sierra; that while so grazing upon said lands, defendants drove and pastured their cattle upon these lands, and *there* communicated to them the disease in question ; while the finding of the court in that connection was, that it could not be determined "whether Lynch Bros.' cattle contracted the disease on the road, or on their own range, or on Grayson's range, owing to the indiscriminate mixing of them with Grayson & Co.'s cattle on both ranges." It certainly would not be claimed that the fact that plaintiffs could not prove whether the disease was communicated to their cattle while upon their own lands or elsewhere would prevent their recovery, if the disease were communicated either in one place or the other. In such case, if the description be wholly immaterial, it may be averred to have happened either in one place or the other, and the fact that it was impossible to tell exactly where the tort took place would not constitute a variance. It is said by Chitty (Pleading, 410) that "where the place of doing an act is precisely alleged, if the description be wholly immaterial, the ground of charge or of complaint not being local, the description may perhaps be rejected as surplusage; as if in trespass for taking goods, the declaration were to allege that they were taken 'in a house' it would seem to be sufficient to prove that they were taken elsewhere, unless indeed a local trespass as to the house be laid in the same count." In *United States* v. *Le Baron*, 4 Wall. 642, 648, it is said that allegations of time, quantity, value, etc., need not to be proved with precision, but that a large

departure from the same is allowable. The same rule also applies to allegations of place. See also *Pope* v. *Allis*, 115 U. S. 363, where proof of the delivery of iron at a different place from that alleged in the complaint was held to have been properly admitted, defendants having failed to prove that they were misled by the variance between the averment and the proof. *Peck* v. *Waters*, 104 Mass. 345, 351.

Besides this, however, none of the alleged variances appear to have been called to the attention of the District Court at any time during the trial, or in any of defendants' numerous objections to the introduction of testimony, or otherwise, nor are they noticed in any one of the fifty assignments of error filed in the Supreme Court of the Territory. If it were not too late to raise any of these questions at this time, the fact that they were never raised before would be a complete answer to any claim that defendants could have been misled by such variances. *Liverpool &c. Ins. Co.* v. *Gunther*, 116 U. S. 113; *Bell* v. *Knowles*, 45 California, 193; *Giffert* v. *West*, 33 Wisconsin, 617.

3. Objections were taken to the testimony of three witnesses, Speed, Halleck and Hargrave, upon the ground that, not being experts, they were permitted to say that the disease with which plaintiffs' cattle became affected was ordinarily called Texas fever. These witnesses, however, were not called as experts, nor did they purport to testify in that capacity. They testified fully as to the symptoms of the disease with which plaintiffs' cattle were afflicted, the resemblance of these symptoms to such as they had previously observed in other cattle, stating that the disease was generally called Texas fever. These were evidently matters of common observation. These witnesses did not claim to testify of their own knowledge as to the name of the disease, but merely as to the symptoms they observed, and that cattle so afflicted were ordinarily spoken of as having Texas fever.

4. The objection to the admission of a certain document, tending to show title to some of the lands in the plaintiffs, is obviously untenable, inasmuch as there was no finding of title in them, and the document appears to have been admitted

simply for the purpose of showing that plaintiffs were not mere trespassers upon the property. The fact that they were in possession was not controverted, and their rights as against the defendants did not even depend upon the lawfulness of such possession. The manner in which they took possession, or the validity of their title, was wholly immaterial.

5. Fourteen assignments of error are addressed to the admission of the depositions of Salmon and Detmers, who testified as experts to the nature and symptoms of the disease, and to the fact that there were certain districts infected with the fever. Salmon resided in Washington, was a professor of veterinary medicine, chief of the United States Bureau of Animal Industry, and at the time in the service of the United States government. He had held this position for more than ten years; had been chief of the veterinary division of the Department of Agriculture; had been in the employ of the Department of Agriculture, investigating the diseases of animals, for over fifteen years, and was called to Washington about 1883 in the discharge of his duties. He had investigated the disease known as the Texas fever. Detmers resided in Illinois, was a veterinary surgeon, and had been in the employ of the Department of Agriculture for the purpose of investigating contagious, infectious and epizootic diseases of horses, cattle and swine, and had investigated the disease known as Texas fever, and was acquainted with its symptoms and diagnosis; had made a good many *post mortem* examinations of cattle that had died with it, and was familiar with the disease. If these gentlemen, who were connected with the Department of Agriculture and made a specialty of investigating animal diseases, were not competent to speak upon the subject as experts, it would probably be impossible to obtain the testimony of witnesses who were. The fact that they spoke of certain districts of Texas as being infected with that disease was perfectly competent, though they may never have visited those districts in person. In the nature of their business, in the correspondence of the department and in the investigation of such diseases, they would naturally become much better acquainted with the districts where such diseases

originated or were prevalent, than if they had been merely local physicians and testified as to what came within their personal observation. The knowledge thus gained cannot properly be spoken of as hearsay, since it was a part of their official duty to obtain such knowledge, and learn where such diseases originated or were prevalent, and how they became disseminated throughout the country. *Spring Co.* v. *Edgar*, 99 U. S. 645; *State* v. *Wood*, 53 N. H. 484; *Dole* v. *Johnson*, 50 N. H. 452; *Emerson* v. *Lowell Gas Light Co.*, 6 Allen, 148. While it is possible that some questions may have been asked of these witnesses which were irrelevant, immaterial and incompetent, the reception of such evidence, as already observed, does not vitiate the findings of the court, or entitle the party to a new trial.

The objections to the testimony of these witnesses are so numerous we have not deemed it necessary to examine them in detail. We are satisfied that there was nothing that went to their competency as experts.

As one of these witnesses testified that Oak and Bee Counties in Texas were known to be permanently infected with the fever, and as the court found that these counties were a part of the infected district; and also found that the cattle in question were shipped from those counties into the Territory of New Mexico, and that the defendants were notified by the plaintiffs of the existence of such disease in these counties at the time they drove their cattle across plaintiffs' range; and as there was evidence tending to show notice to the defendants of the disease in their own cattle, and of the liability to communicate the same to plaintiffs' cattle, and that they were requested to abstain from driving them over plaintiffs' range, we see no reason for attacking the findings of the court in this connection, and none that would authorize us to infer that defendants did not have the requisite notice to render them chargeable.

6. Error is also assigned upon the ground that it appears from the special finding of fact that plaintiffs were guilty of contributory negligence in allowing their cattle to range, graze and water on defendants' range with their cattle, and

made no effort to prevent them from doing so, or to aid in keeping defendants' cattle off their range. In this connection the court found that the cattle of defendants, Grayson & Co., were driven from the railway station along the public road, through the range where the plaintiffs' cattle grazed, by eighteen men. "They were driven straight on the road, and were strung out and men placed on each side of them, to keep them in the road, and one or two ahead to keep the herd on the road and drive away any other cattle that might be in the way, and keep them back from the herd. They were generally kept within twenty yards of the road on either side, and often in less space. They were kept as close together as possible. They did not get outside of that space. Only a few other cattle were seen along the road while driving, and such were driven away. No cattle not belonging to the herd got into it, or mixed up with it, while crossing plaintiffs', Lynch Bros.', range. They were driven without stopping from the time they got within sight of where Lynch Bros. claimed their cattle range, to the Percha River, inside of the defendants', Graysons', range, where about four hundred were stopped and others taken on to other parts of the range of defendants. Grayson & Co.'s range extended south of the Percha River one half or three fourths of a mile."

"Plaintiffs were informed by the man who was in charge of defendants' cattle when they came up that they came from San Antonio, Texas. Neither plaintiffs' nor defendants' range was fenced, but the cattle ranged at will, except that defendants, Grayson & Company, placed men at the Percha River, near the dividing line between the two ranges, and tried to keep the cattle back on each range and requested plaintiffs, Lynch Brothers, to do the same, and put a number of men there to help them; but Lynch Brothers declined to do so, saying they were there first; so it was impossible to keep the cattle of the two ranges from going from the one to the other. Lynch Brothers' cattle in large numbers went up onto Grayson & Company's range, and Graysons' cattle in large numbers went down onto Lynch Brothers' range. Grayson & Company at times rounded up their cattle and

drove them off of Lynchs' range, but Lynch Brothers did not drive their cattle back off Graysons', nor do anything to prevent their going there. When the cattle passed from one range to the other they mixed with the cattle on the range to which they went, and grazed on the same pasture and drank of the same water. Defendants from time to time drove their cattle back from plaintiffs' range to their own, the last time just prior to September 8, 1884. Lynch Brothers made no effort to prevent their cattle from going on Grayson & Company's range or from watering at the same holes and grazing and feeding on the same pastures and ranging with Grayson & Company's cattle which came from Texas in 1884, but allowed them to do so in large numbers.

"Lynch Brothers made no effort to keep Grayson & Company's cattle off their range and from grazing and feeding on the same grasses and ranging with their cattle and watering at the same watering holes with them, but when Lynch Brothers' cattle went onto Grayson & Company's range they would drift back to Lynch Brothers' range, carrying with them large numbers of Grayson & Company's new cattle, which had not become so thoroughly located as to keep them on their own range."

While the court, from this testimony, might have found that the plaintiffs did not use all the precautions that were possible to prevent the infection of their own cattle, it was not bound to find that they were guilty of contributory negligence in this connection. It did not seem to be the custom in that part of the country to fence the ranges, and the plaintiffs were not bound to put themselves to the sole expense of preventing their cattle from being intermingled with those of the defendants, in order to escape the possibility of infection; since in doing this they might be put to a very large expense without the possibility of recovering the same from the defendants, unless they could prove that defendants' cattle were in fact diseased, and that the precautions taken by them had in fact saved their own from infection. Upon the contrary, the defendants having been apprised of the fact that their cattle were or might be infected were bound to prevent such

infection being communicated to the plaintiffs' cattle. By the sixth section of the act of Congress of May 29, 1884, c. 60, for the establishment of a Bureau of Animal Industry, 23 Stat. 31, it is provided that no railroad company shall receive for transportation, or transport, from one State or Territory to another, any live stock affected by any contagious, infectious or communicable disease. "Nor shall any person, company or corporation deliver for such transportation to any railway company . . . any live stock, knowing them to be affected with any contagious, infectious or communicable disease; nor shall any person, company or corporation drive on foot or transport in private conveyance from one State or Territory to another . . . any live stock, knowing them to be affected with any contagious, infectious or communicable disease," etc. If defendants had knowledge of the fact that their cattle were infected with Texas fever, they were guilty of a violation of the statute in delivering them to the railway company for transportation to New Mexico, and the duty devolved upon them of using all necessary care to prevent their communicating the disease to healthy cattle. What care it was necessary for the plaintiffs to take in that connection depended upon circumstances, and was a proper question for the court.

In one view of the case it might be said that the plaintiffs, having knowledge that defendants' cattle were or might be diseased, were guilty of contributory negligence if they did not use every possible precaution to prevent the spread of the disease to their own cattle. This, however, might be an unjust rule applicable to a particular case, since it would shift upon the plaintiffs the entire duty and expense of avoiding the contagion when the defendants were the sole cause of the disease being introduced into that neighborhood. It was for the court to judge from the testimony what precautions the plaintiffs, in the reasonable and proper care of their own cattle, were bound to take, and it is evident, from the ultimate finding of the liability on the part of the defendants, that the court must have found that, under the circumstances of the case, the plaintiffs were not guilty of contributory negligence. There

are in reality two entirely separate findings of facts in the case, the first one of which is much more specific than the other, but contains evidence of facts as well as the facts themselves, but is less complete than the "statement of further findings of facts and conclusions of law," which is practically a finding of the ultimate facts of the case, and of the conclusion that, from the facts so found, the plaintiffs are entitled to judgment. There is no finding of contributory negligence on the part of the plaintiffs, nor do we think that the facts as found compel the conclusion that the plaintiffs were guilty of such negligence.

Other errors are assigned which it is unnecessary to notice in detail. Most of them are covered by those already discussed, and some of them are so obviously frivolous as to require no discussion.

It is to be regretted that defendants found it necessary to multiply their assignments to such an extent, as there is always a possibility that, in the very abundance of alleged errors, a substantial one may be lost sight of. This is a comment which courts have frequent occasion to make, and one which is too frequently disregarded by the profession.

There is no error in this case of which the defendants are entitled to complain, and the judgment of the court below is accordingly

*Affirmed.*

Mr. JUSTICE FIELD dissented.