## H. P. CROFF v. C. M. CRESSE.

(Filed July 30, 1898.)

ANIMALS—*Quarantine Law—Contagious Disease—Knowledge—Damages.* One who drives, leads, moves, drifts, ships, transports, or causes to be driven, led, moved, drifted, shipped, or transported cattle from a district known to him to be a district infected with contagious or infectious diseases of a malignant character, and liable to be communicated or conveyed, against which the officers of the United States and of the Territory have quarantined, into a protected area within the Territory, after he has been notified not to do so, and with full knowledge of the law, is liable for all damages which may thereafter result from the effect of any contagious disease communicated by such cattle to other cattle within the protected area, regardless of whether he ' rd actual know edge of .h fact t at such cattle were affected or infected with such contagious disease at the time he drove them across the quarantine line; and one who drives, leads, moves, drifts, ships, transports, or causes to be driven, led, moved drifted shipped, or transported such cattle from an infected district into a protected area and places them in the pasture of another, where other cattle are running, and such other cattle take such contagious disease and die, such party is liable for all damages occasioned by the loss of such cattle, even though he had no actual knowledge that the cattle which he placed in the pasture were affected or infected with a contagious disease.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before J. C. Tarsney, District Judge.*

*R. B. Forrest,* for plaintiff in error.

*C. O. Blake* and *E. E. Blake,* for defendant in error.

Action by C. M. Cresse against H. P. Croff. There was a judgment for plaintiff, and defendant appeals. Affirmed.

Opinion of the court by

BURWELL, J.: This is an action for damages by C. M. Cresse against H. P. Croff for $700, alleged to have been sustained by the plaintiff by reason of the defendant having placed in plaintiff's pasture certain cattle which were affected or infected with a contagious disease, which disease was communicated to plaintiff's cattle then in such pasture, and from which disease some of plaintiff's cattle died, and others were damaged in price from the effects thereof, and by reason of the infection of plaintiff's pasture with the contagious disease aforesaid. Issues were joined, and a trial was had, which resulted in a judgment for plaintiff in the sum of $200 and costs, and the attachment sued out by plaintiff was sustained. Defendant appeals to this court.

The only error urged by appellant consists in the giving of a certain instruction to the jury, and the refusal to give two other instructions requested by appellant; but, before considering these alleged errors, we will call attention to the statute referring to the quarantine law, a violation of which is charged by plaintiff against defendant in this suit. The quarantine lines referred to in this case were fixed by the commissioner of agriculture in a bulletin dated April 26, 1897, issued under the provisions of the act of congress of May 29, 1884, (23 Statute 32,) entitled "An Act for the Establishment of a Bureau of Animal Industry, to Prevent the Exportation of Diseased Cattle, and to Provide Means for the Suppression and Extirpation of Pleuro-pneumonia and

Other Contagious Diseases, Among Domestic Animals."

Section 3 of this act reads as follows: "That it shall be the duty of the commissioner of agriculture to prepare such rules and regulations as he may deem necessary for the speedy and effectual suppression and extirpation of said diseases, and to certify such rules and regulations to the executive authority of each state and territory, and invite said authorities to co-oporate in the execution and enforcement of this act. Whenever the plans and methods of the commissioner of agriculture shall be accepted by any state or territory in which pleuro-pneumonia or other contagious, infectious, or communicable disease is declared to exist, or such state or territory shall have adopted plans and methods for the suppression and extirpation of said disease, and such plans and methods shall be accepted by the commissioner of agriculture, and whenever the governor of a state or other properly constituted authorities signify their readiness to co-operate for the extinction of any contagious, infectious, or communicable disease in conformity with the provisions of this act, the commissioner of agriculture is hereby authorized to expend so much of the money appropriated by this act as may be necessary in such investigations, and in such disinfection and quarantine measures as may be necessary to prevent the spread of the disease from one state or territory to another."

The driving of infectious or diseased cattle across the quarantine line was made an offense by the laws of Oklahoma, under section 11, on page 244 of the Session Laws of 1897.

The defendant drove, or caused to be driven, certain

cattle across the quarantine line from Oklahoma county, which was within the infected district, into Canadian county, which was within the area protected by and included within the quarantine line or boundary line described by the live stock sanitary commission, and subsequent to the governor's proclamation announcing the quarantine regulations. Defendant drove a part of these cattle to plaintiff's place, and, with his permission, turned them into his pasture. A few weeks after defendant's cattle were placed in the pasture, all of the cattle therein became affected, and the quarantine officer pronounced the affliction Spanish fever. There seems to be practically no dispute as to the facts. The controversy in this court is over the construction to be placed upon the quarantine law, as raised by the instructions refused and the one given.

The special instructions requested and refused are as follows:

"No. 1. You are instructed that the plaintiff cannot recover in this cause unless he has shown that the defendant acted in bad faith in placing his cattle in the pasture of the plaintiff; and, notwithstanding said cattle may have been infected at the time they were so placed in said pasture, yet if it appears from the evidence to your satisfaction that the defendant had no knowledge of the existence of such infection, and was acting in good faith, then you should find for the defendant. Refused. J. C. Tarsney, Judge. Exception allowed.

"No. 2. The plaintiff is not entitled to recover in this action unless he has shown that the defendant had knowledge that his said cattle were infected at the time they were placed in the plaintiff's said pasture, or such facts existed to his knowledge, from which he would be charge-

able with such knowledge of infection, if you find from the evidence there was such infection. Refused. Jno. C. Tarsney, Judge. Exception allowed."

Instruction given, and excepted to by defendant:

"I instruct you that the material allegations of the petition in this case, necessary to be established by the preponderance of the testimony, are (1) that on or about the 21st day of June, 1897, the defendant, H. P. Croff, had in his possession and under his control, in the county of Canadian and Territory of Oklahoma, certain cattle, which said cattle had, at some date between the 29th day of April, 1897, and the said 21st day of June, 1897, been driven, moved, drifted, or transported from the county of Oklahoma, across the line between said county of Oklahoma and county of Canadian, in said Territory of Oklahoma, into the said county of Canadian; (2) that said cattle were so driven, moved, drifted, or transported across said county line, from said county of Oklahoma, into said county of Canadian, by the said defendant, H. P. Croff, or that he, the said H. P. Croff, caused said cattle to be driven, drifted, moved, or transported across said county line from the said county of Oklahoma to the said county of Canadian, between the said 29th day of April, 1897, and the 21st day of June, 1897, or that on said 21st day of June, 1897, he, the said defendant, H. P. Croff, had in his possession, charge, and control the said cattle, knowing that said cattle had been driven, moved, drifted, or transported across said county line from Oklahoma county into said county of Canadian at some time between the said 29th day of April, 1897, and the 21st day of June, 1897; (3) that at the time said cattle were driven, drifted, moved, or transported across said county line from Oklahoma county into the county of Canadian, and on said 21st day of June, 1897, said cattle were affected or infected with a contagious or infectious disease of a malignant character, and liable to communicate or convey such disease to live

stock within the said county of Canadian; (4) that said cattle so infected or affected with such disease, and liable to communicate or convey the same to other live stock within the county of Canadian, were by the defendant placed in the pasture of the plaintiff, and by the defendant permitted to mingle with plaintiff's live stock, then and there in said pasture; (5) that the cattle of the defendant, so affected or infected with such disease, and so placed by defendant in plaintiff's pasture, did communicate such contagious or infectious disease to cattle of the plaintiff, and that by reason thereof some of plaintiff's cattle died, and that others of plaintiff's cattle sickened and were injured thereby."

The contention of appellant is that, before plaintiff could recover, he would have to prove that defendant acted in bad faith in placing his cattle in plaintiff's pasture, and, even though the cattle may have been infected or affected at the time, yet if the defendant had no knowledge of the existence of such infection or disease, and was acting in good faith, the plaintiff could not recover; that plaintiff had to show, by a preponderance of the evidence, that defendant had knowledge that his cattle were infected at the time they were placed in plaintiff's pasture, or facts existed, to his knowledge, from which he would be chargeable with such knowledge or infection; and cited two cases, decided by the supreme court of Kansas, in support of his position.

The case of *Patee v. Adams*, (Kan. Sup.) 14 Pac. 505, referred to by palintiff in error, was not like the case at bar. The defendant in that case went into the open market, in Kansas City, Kan., and bought his cattle in the ordinary course of trade, which city was within the state, and not within any infected district, and there were no existing facts or circumstances which would

charge him, or tend to charge him, with knowledge of
any infectious disease. A man, doubtless, has a right to
go into the markets of the city, within his own state, and
not within a section of country known or designated as
an infected district, and in good faith buy cattle, without
out any knowledge of the existence of contagious dis-
eases in such locality; and the courts, under such cir-
cumstances, should place the right of recovery for dam-
ages sustained by loss of one's cattle, resulting from dis-
ease communicated to them under such circumstances,
on the common law rule of knowledge of the existence of
such disease or of the knowledge of such facts and cir-
cumstances as would charge him with knowledge
thereof.

The other case cited is *Railway Co. v. Finley*, (Kan.
Sup.) 16 Pac. 951. The defendant in that case was a
railroad company shipping cattle to market, and met
with a wreck. Section 6 of the act of congress, above re-
ferred to, (23 Statute 32,) after reciting that no railroad
company should receive for shipment any live stock,
knowing them to be affected with any contagious, infec-
tious, or communciable disease, and especially the dis-
ease known as "pleuro-pneumonia," further provides
"that the so-called splenetic or Texas fever shall not be
considered a contagious, infectious or communicable dis-
ease within the meaning of sections 4, 5, 6, and 7, of this
act, as to cattle being transported by rail to market for
slaughter, when the same are unloaded only to be fed
and watered in lots on the way thereto." By the laws
of Kansas it is also provided that evidence that cattle
are of wild or undomesticated habits shall be *prima facie*
evidence that they are diseased. This provision clearly
shows that it was not the intention of the legislature of

that state to make one who drove cattle across the line into the state liable for damages without any evidence or knowledge that such cattle were diseased, but it provided that the fact that cattle are of wild or undomesticated habits shall be *prima facie* evidence that they are diseased. We have no such a statute. The court in that case, we think, laid down the rule more broadly than is stated by appellant. It says: "We have construed the act upon which the alleged liability is founded in this case so that no recovery can be had against any person or corporation, acting in good faith, unless such person or corporation had knowledge, or such fact existed as to make the person or corporation chargeable with knowledge, that the cattle driven or transported into the state were diseased, or were of a kind liable to communicate disease to the domestic cattle of the state,"—citing *Patee v. Adams, supra.* The instructions in that case were, in substance, that a recovery could be had against the company, although it acted in the best faith, and had no knowledge that the cattle it was transporting were diseased, and although no such fact existed as to make it chargeable with knowledge that the cattle were diseased or were of a kind liable to communicate disease. The supreme court of that state said that the trial court did not take the correct view of the statute. There was no proof before the jury that the cattle were of wild or undomesticated habits, or that the railway company loaded the cattle upon their cars at any point south of the quarantine line; hence they were not chargeable with knowledge of the disease.

In the case at bar the facts were entirely different. The evidence clearly showed that the defendant drove

his cattle, or caused them to be driven, from a district which he knew had been duly and legally declared to be infected, into an area prohibited by the quarantine law. He was notified, before he drove his cattle across the line, that it was against the law to do so; but instead of heeding the warning, and obeying the law, he had his cattle driven over the line in the dead hour of the night, and he selected that time evidently because he thought he would not be detected. Defendant's acts were such as would, in our judgment, charge him with fraud; and, even if the refusal of the instructions requested by defendant were error, (which we are satisfied it was not,) defendant is in a poor position to urge good faith and lack of knowledge.

The question involved in this case was decided in the case of *Lynch v. Grayson*, 25 Pac. 992, by the supreme court of New Mexico, in which opinion appears the following language: "It would not be required, on the part of the plaintiff, to prove that the defendants knew, as an absolute fact, that their cattle, when being shipped, were carrying the disease germs with them; but, if they were shipping from a locality known to be infected and liable to communicate the disease, they would come under the provisions of the statute before referred to, and it would devolve upon them to take such precautionary steps as would prevent their cattle from communicating any infectious or communicable disease to other cattle." This decision was affirmed by the supreme court of the United States in 163 U. S. 468, 16 Sup. Ct. 1064.

The instruction given by the trial court, when considered with the other instructions given, fairly states the law, and was as favorable to defendant as he could

expect. It was not necessary, under the law and cir-
cumstances in this case, that the defendant should have
knowledge that the cattle were diseased, when he him-
self drove or caused them to be driven across the quaran-
tine line from an infected district. By section 11 of the
1897 Session Laws of Oklahoma, it is made a criminal
offense for any person to drive, lead, move, drift, ship,
transport, or cause to be driven, led, moved, drifted,
shipped, or transported, into or through any county or
part thereof in this Territory, within the area protected
by and included within the quarantine or boundary lines
described by the live stock sanitary commission, or one
of the inspectors appointed thereby, any live stock affect-
ed or infected with a contagious disease of a malignant
character, and liable to communicate or convey such dis-
ease to live stock within said area; and upon conviction
thereof the law imposes a fine of not less than $100, nor
more than $5,000, and such person may be imprisoned
in the county jail not less than thirty days, nor more
than one year, or may be punished by both such fine and
imprisonment, and, in addition thereto, such person shall
be liable to any person or persons injured thereby for all
damages they may sustain by reason of the communicat-
ing or conveying such disease, to be recovered in a civil
action in any court of competent jurisdiction. The pro-
visions of this act are plain. They could hardly be mis-
understood. By them, one who changes cattle, which
are affected on infected with a contagious or infectious
disease of a malignant character, from a county outside
of the protected area to one within the same, and any
damage results therefrom, by reason of such disease be-
ing communicated to other cattle, he shall be liable

—27

Croff v. Cresse.

therefor. Defendant knew the law, and was acquainted with the quarantine regulations; and, when he drove his cattle from an infected district into the area protected by the quarantine laws, he did so at his peril, and was thereafter chargeable in law with knowledge of their diseased condition; and without passing upon the question as to whether or not one who drives cattle from an uninfected district, which cattle are not known to be affected or infected with any of the diseases named in the statute, shall, without knowledge, or knowledge of such facts and circumstances as would charge him with knowledge of such disease, be liable, we hold that one who drives cattle from a district known to be an infected district, against which the officers of the United States and of the Territory have quarantined, into a protected area within the Territory, after he has been notified not to do so, and with full knowledge of the law, is liable for all damages which may thereafter result from the effect of any contagious disease communicated by such cattle to other cattle within the protected area, even though he had no actual knowledge of the affection or infection of such cattle at the time he drove them across the quarantine line. It was not necessary, in order to make defendant liable in damages in this case, that he should have known that his cattle were infected or diseased at the time he turned them into the plaintiff's pasture.

We find no error in this case. The judgment of the lower court will be affirmed, at costs of the appellant.

Tarsney, J., who presided at the trial below, not sitting; all of the other Justices concurring.