PULS v. HORNBECK *et ux.*

No. 188.    Opinion Filed July 13, 1909.

(103 Pac. 665.)

SALES—Latent Defect—Fraudulent Concealment—Knowledge and Intent. A vendor, who sells cattle at a sound price, knowing that they have Texas fever ticks on them, or any other infection affecting their value for the purpose for which they are bought, the infection not being easily detected by those having had no experience with it, and who does not disclose such knowledge to the vendee, is guilty of the fraudulent concealment of a latent defect, for which he must answer, and the rule of **caveat emptor** does not apply.

(a) But the vendor is not answerable unless he has knowledge, prior to the time the sale is consummated, that the cattle had such ticks on them.

(Syllabus by the Court:)

*Error from District Court, Kingfisher County; A. H. Huston, Judge.*

Action by L. Puls against S. T. Hornbeck and wife. Judgment for defendants, and plaintiff brings error. Affirmed.

On the 15th day of September, 1906, the plaintiff in error, L. Puls, as plaintiff, commenced this action in the district court of Kingfisher county, Okla. T., against the defendants in error S. T. Hornbeck and Emilia Hornbeck, his wife, as defendants, alleging, in substance: That on the 3d day of September, 1906, he entered into a contract with the defendants for the purchase of 35 head of mixed cattle, at the price of $400; that the cattle were delivered to him under such contract; that he paid the purchase price; that the cattle were sold to him as sound and merchantable and free and clear of all disease; that the plaintiff so understood and contracted for said cattle as sound and merchantable; that at the time the cattle were sold to plaintiff the same were infected with what is known as "Texas fever ticks," and were not merchantable stock; that the fact that said cattle were infected with Texas fever ticks was concealed from the plaintiff by the defendants; that the defendants knew that the cattle were so infected and not merchantable, but that they concealed such facts from the plaintiff and sold the cattle to him as sound and merchantable; that plaintiff placed said cattle in his pasture and mixed them with other cattle, and shipped them, together with the other cattle, to the market; and that, by reason of said cattle being infected with Texas fever ticks, he suffered various elements of damages, for which he seeks to recover from the defendants the sum of $1,500.

The plaintiff asked the court to instruct the jury as follows, which was refused:

"(4p.) The jury are instructed that if the plaintiff paid defendants a fair value for said 35 head of cattle, as if said cattle were free and clear of such Texas fever ticks, and the defendants received such consideration from the plaintiff, such consideration would import that such cattle were in sound condition and free of Texas fever ticks and of the value of sound cattle and free of fever ticks, at the place where those cattle were at the time plain-

tiff purchased them from the defendants. (5p.) The jury are instructed, also, in estimating damages, if there were any damage sustained by plaintiff, to take into consideration the expense of plaintiff, the annoyance and time occupied by plaintiff because of such cattle being infected with fever ticks, and because of such quarantine regulations. (6p.) You are instructed that in the sale of personal property the law is that there is an implied warranty that the article or thing sold is fit for the purpose for which the article or thing is intended. If you find from the evidence that the plaintiff in this case, Puls, purchased the cattle from the defendants for the purpose of using the same for sale upon the markets, and such fact was known to the defendants at the time of the sale, then if you further find that the cattle at the time were infected with what is known as Texas fever ticks, or fever ticks, then your verdict should be for the plaintiff, provided you further find that the plaintiff sustained any damage by reason of the transaction. (7p.) If the jury believe from the evidence that the defendants sold cattle to the plaintiff for the purpose of plaintiff shipping them to market, and that the defendants knew at the time that such cattle were infected with Texas fever ticks, and the defendants did not disclose that fact to the plaintiff, and the plaintiff did not know that fact, then the jury may allow exemplary damages over and above the actual damages sustained by the plaintiff as to the jury may seem just and reasonable under all the circumstances of the case."

*Bradley & Bradley,* for plaintiff in error, citing: 14 A. & E. Enc. Law (2d. Ed.) 77, note 7; *Barnard v. Yates,* 1 Mott. & M. (S. C.) 142; *Crawford v. Wilson,* 2 Mill (S. C.) 353; *Timrod v. Schoolbred,* 1 Bay (S. C.) 324; *Bailey v. Nickols,* 2 Root (Conn.) 407; *Hoe v. Sanborn,* 21 N. Y. 552; *Craig v. Ward,* 3 Keyes (N. Y.) 392.

*R. W. Wylie* and *Lee M. Gray,* for defendants in error, citing: *Kohl v. Lindsey,* 39 Ill. 195; *Nottingham v. Wright,* 72 Ill. 390; 5 A. & E. Enc. Law (1st Ed.) 44; Parsons on Contracts (7th Ed.) p. 577.

Wɪʟʟɪᴀᴍs, J. (after stating the facts as above). In this case the facts are undisputed that the defendant in error S. T. Hornbeck understood that the cattle, which were located above

the quarantine line, were being purchased by the plaintiff in error for the purpose of being shipped to the Wichita or St. Joe market. Cattle infected with Texas fever ticks would not be classed as marketable cattle in said markets.

The court instructed the jury:

"(5) When one sells personal property he impliedly warrants that it is merchantable and reasonably suited to the use intended, and that the seller knows of no latent defects. 'Latent defects' mean such defects as are hidden. The implied warranty, however, does not cover such defects which can be discovered by ordinary prudence and caution. As to those, the law presumes the buyer to exercise his own judgment. If you find that the cattle referred to in the evidence in this case, or a portion of them, were infected with Texas fever ticks, and that such infection rendered the cattle unmerchantable, or unfit for the purpose for which they were purchased, and that such infection was a latent defect, and was not such a defect as could be discovered by ordinary prudence and caution, then the seller will be held to have impliedly warranted them to be free from such defect. Upon the other hand, if you find from the evidence that the cattle at the time they were purchased by the plaintiff were infected with Texas fever ticks, but that such defect, if you find same to be a defect, was such that could have been discovered by the plaintiff by ordinary prudence and caution, and that he failed to exercise the same, then he cannot hold the defendant to any implied warranty as to the cattle being free from such defect."

The court further instructed the jury:

"(6) The detriment caused by the breach of a warranty of the fitness of personal property for a particular use is deemed to be the excess, if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at that time, together with a fair compensation for the loss incurred by an effort in good faith to use the property for the purpose for which it was purchased. That is, the measure of damages in this case, if you find that the plaintiff is entitled to recover any damages, will be the excess, if any, of what the cattle would have been worth had they been sound and free from any infection over their actual value at the time of the purchase, together with a fair compensation for the loss incurred by the plaintiff in an effort in good faith to use the

cattle for the purpose for which he purchased the same; but, before the plaintiff can recover damages for loss incurred in an effort to use the cattle for the purpose for which he purchased them, he must show by a preponderance of the evidence that the defendant knew, or had reasonable grounds to know, the purpose for which the plaintiff intended to use them."

And further:

"(8) If the jury believe from the evidence that the cattle which the defendant S. T. Hornbeck sold the plaintiff, Puls, had Texas fever ticks upon them at that time, and that the defendant knew that fact, or knew that they had ticks upon them, but was uncertain as to whether such ticks were fever ticks or ticks that were harmless, and if defendant also knew that plaintiff was buying such cattle for shipment to market, and defendant did not disclose the fact of such cattle being infected by such ticks, then the defendant would be liable to plaintiff for all the damages sustained by plaintiff occasioned by the depreciation in value of the cattle in the market by reason of being infected with fever ticks; and the defendant would, under such circumstances, be liable to the plaintiff for all damages sustained by the plaintiff resulting from the commingling of the cattle he bought from Hornbeck with plaintiff's other cattle."

In the case of *Grisby v. Stapleton,* 94 Mo. 429, 7 S. W. 423, the court said:

"There is no claim in this case that defendant (vendee) knew these cattle were diseased. It seems to be conceded on all hands that Texas fever is a disease not easily detected, except by those having had experience with it. The cattle were sold to the defendant at a sound price. If therefore plaintiff knew they had the Texas fever, or other disease materially affecting their value upon the market, and did not disclose the same to the defendant, he was guilty of a fraudulent concealment of latent defect. It is not necessary to this defense that there should be any warranty or representations as to the health or condition of the cattle. Indeed, so far as this case is concerned, if the cattle had been pronounced by some cattlemen to have the Texas fever, and, after knowledge of that report came to the plaintiff, some of them to his knowledge died from sickness, then he should have disclosed these facts to the defendant. They were circumstances materially affecting the value of the cattle for the purposes for which they

were bought, or for any other purpose, and of which defendant, on all the evidence, had no equal means of knowledge. To withhold these circumstances was a deceit, in the absence. of proof that defendant possessed such information."

See, also: *Ricks v. Dillahnty,* 8 Port. (Ala.) 133; *Burnett v. Stanton & Pollard,* 2 Ala. 184; *Armstrong v. Bufford,* 51 Ala. 413; *Cardwell v. McClelland,* 3 Sneed (Tenn.) 150; *Jeffrey v. Bigelow,* 13 Wend. (N. Y.) 518, 28 Am. Dec. 476; *McAdams v. Cates,* 24 Mo. 223; *Barron v. Alexander,* 27 Mo. 530.

In the case at bar, the plaintiff was buying cattle in a district above the quarantine line, where the Texas fever ticks would not reasonably be supposed to exist, and a reasonable and prudent man would not be supposed to examine for them (*Croff v. Cresse,* 7 Okla. 414, 54 Pac. 558), and, when he (the plaintiff in error) went to buy cattle in such a district for the purpose of shipping them to the northern market, if the defendant in error S. T. Hornbeck, knowing that cattle infected with the Texas fever ticks would not be marketable in such market, stood silently by and sold such cattle to the plaintiff in error with knowledge of such infection, he would be liable for proper damages. By instruction 8, *supra,* the court appears to have so instructed the jury. The testimony is undisputed that S. T. Hornbeck knew the purpose for which the cattle were brought, and the jury necessarily found in this case that said Hornbeck had no knowledge that the cattle were so infected, and therefore, having no such knowledge, he was not liable under any theory. *Croff v. Cresse, supra; Railway Co. v. Finley,* 38 Kan. 550, 16 Pac. 951; *Patee v. Adams,* 37 Kan. 133, 14 Pac. 505; *Lynch v. Grayson,* 5 N. M. 487, 25 Pac. 992; Id., 163 U. S. 468, 16 Sup. Ct. 1064, 41 L. Ed. 230.

There are various assignments of error relative to the admission of testimony; but this evidence, except in instances where it is purely hearsay, or the questions are leading, was offered as to the measure of damages; and there being no liability found by the jury, if there was error as to the admission of testimony, there having been no damages found whatever, it would be error without injury.

We think the instructions of the *nisi prius* court properly submitted the issues to the jury as to the liability and were sufficiently favorable to plaintiff in error; and, the jury having found against the plaintiff in error on that point, if any evidence was excluded as to the measure of damages under the finding of the jury as to the facts, it would be error without injury.

The vice of instruction 4p., requested by the plaintiff in error, is that it eliminates the question as to knowledge on the part of the defendants in error as to the infected condition of the cattle, and for that reason should have been refused. Instruction 5p., requested by the plaintiff in error, was susceptible of the construction that the plaintiff was entitled to recover damages for mental annoyance, and on that score it was properly refused; there being neither any allegation nor proof tending to support such damages. Instruction 6, given by the court, appears to have properly submitted the question of damages, and for that reason, if for no other, there was no error in refusing instruction 5p. Instruction 6p., requested by the plaintiff in error, is fairly covered by instruction 8, given by the court. The jury having found that there was no liability whatever on the part of the defendants, the refusal of instruction 7p. was without error, because, if the plaintiff was not entitled to nominal and actual damages, the failure to submit the question of exemplary damages, even though plaintiff in error was entitled to such submission, would be error without injury.

The evidence failed to sustain any liability against the wife of the defendant.

Upon the whole record, we find no reversible error, and the judgment of the lower court is, accordingly, affirmed.

All the Justices concur.