Before STATE INDUSTRIAL BOARD, Respondent.

ALFRED KITTLE, Respondent, *v.* TOWN OF KINDERHOOK and Another, Appellants.

Third Department, November 12, 1925.

Workmen's compensation — claimant injured while driving team on town highway — team was hired from farmer who was general employer of claimant — claimant subject to order of superintendent of highways while working on highway — although claimant's wages were paid to farmer, claimant was employee of town at time of accident — farmer was not independent contractor — insurance carrier, having received premium, with full knowledge of facts, is estopped by Workmen's Compensation Law, § 55, from claiming that policy does not cover — claimant, though hired by superintendent of highways, was employee of town and was covered by policy under Workmen's Compensation Law, § 2, subd. 3, and § 50, subd. 4-a, and Highway Law, § 47, subds. 1 and 4 — award reversed and claim remitted because of error in computation of amount — award must be fixed under Workmen's Compensation Law, § 14, subd. 3, and not under subds. 1 or 2.

The claimant, who was a general employee of a farmer, was in the employ of the defendant town at the time he was injured by a cave-in of a gravel bank, since it appears that the town hired the farmer's team, but independently hired the claimant to drive the team while it was working for the town; that the claimant was not under the supervision of the farmer while he was working on the town highway but was under the direct supervision of the superintendent of highways; and that, although the claimant's wages were paid directly to the farmer, who in turn paid the claimant, he could have had a check directly to himself at any time had he so wished.

The farmer was not an independent contractor on the highway, since it appears that he had no supervision over the team while it was being driven by the claimant in highway work, but simply let his team for hire to be used for work entirely under the direction and supervision of the superintendent of highways.

The insurance carrier is estopped by section 55 of the Workmen's Compensation Law from denying that its policy covers the claimant, since it appears that it received and accepted the premium on the basis that it covered all employees working on town highways, and with full knowledge of the circumstances and the custom of hiring teams and drivers for highway work, and figured its premium on the basis of the knowledge so obtained.

The claimant, although hired by the superintendent of highways, was an employee of the town and covered by the policy, in view of subdivision 3 of section 2, and subdivision 4-a of section 50 of the Workmen's Compensation Law, and subdivisions 1 and 4 of section 47 of the Highway Law, for while the hiring was originally done by the superintendent of highways, it was approved by the town board.

The award must be reversed, however, and the claim remitted because of an error in the computation of the amount of the award, which was at the rate of thirteen dollars and eighty-five cents per week, a rate that is not two-thirds of the average weekly wage, as shown by the findings, or as shown by the evidence. On the facts developed at the hearing, the average weekly wage cannot be fixed under subdivisions 1 or 2 of section 14 of the Workmen's Compensation Law, since the claimant had not worked substantially the whole year immediately preceding his injury, and there is no proof as to the average daily wage of an employee in the same class working substantially the whole of such immediately preceding year in the same or a similar employment in the same or neighboring place, and, therefore, on the facts developed, it would seem that the award must be fixed under subdivision 3 of section 14.

H. T. KELLOGG, J., dissents in part.

APPEAL by the Town of Kinderhook and another from two awards of the State Industrial Board, made respectively on the 28th day of April, 1924, and on the 27th day of October, 1924.

*George W. Greene* [*Rollin B. Sanford* of counsel], for the appellants.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

On July 16, 1923, the claimant suffered accidental injuries while repairing highways in the town of Kinderhook. There was a cave-in of the bank from which they were getting gravel. Claimant sustained an injury to the spine, with a probable fracture in the lumbar region with paralysis of both legs. He was at the time employed to haul gravel with a team, to load and unload the wagon and spread the gravel upon the highway. The claimant had been so working from the 15th day of June, 1923, to the date of the accident and was engaged each working day except when it rained.

It is claimed that the claimant was not an employee of the town, but was the employee of one Purcell, Jr. In the employer's report it is stated that the town of Kinderhook was the employer; that claimant was injured in his regular occupation, being caught in a cave-in in the gravel bank; that his regular occupation was

laborer on town highway, working six days per week. This report is signed in the name of the town of Kinderhook by E. C. Van Alstyne, superintendent of highways. The testimony of Van Alstyne very substantially fortifies the answer in the report. The superintendent with the approval of the town board hired a team from Mr. Purcell, and hired the claimant to drive it. He says he hired Kittle. Purcell did not pay claimant for this work, nor in doing it was he subject to Purcell's orders. The town paid all the bills for this highway labor. Kittle was subject to the direction of the superintendent or his foreman in doing the work; they directed him where to work, how to work and what to do. Kittle was subject to discharge by the superintendent and not by Purcell. The terms of hiring were fifty cents an hour for the team and thirty-five cents an hour for the driver. Later this rate was changed so that the driver was paid forty cents an hour and the team forty-five cents. For his own convenience the checks were made out by the supervisor to Purcell, who in turn paid the claimant; but the claimant could have had a check direct to himself at any time had he so wished. Also the town contracted for and paid for the insurance as later appears. While working upon the highway claimant was not the employee of Purcell. This likewise disposes of the argument of appellant based upon the fact that Purcell is a farmer.

The objection is separately taken that Purcell was an independent contractor and Kittle his employee. The evidence above stated we believe answers this objection. There are some further facts. The claimant had been working for Purcell, but, when he worked upon the road, he received three dollars and sixty cents per day; when on the farm three dollars. He did no work upon the farm during the days when he was working on the highway. Purcell made no profit from the hiring of Kittle on the road and he paid Kittle nothing therefor. The work on the highway was in no sense farm work, nor was it incidental to farm work. It was work in which Purcell had no interest, direct or indirect, further than in the compensation received for the use of his team. In connection with the highway work Purcell was in no sense an independent contractor. He simply let his team for hire, to be used in work entirely under the direction and supervision of another.

This is in truth a contest between the claimant on the one part and the carrier, not the town, on the other. The carrier argues that its contract did not cover this claimant; that it had no knowledge that Kittle was in the employ of the town. The policy is not in the record, but the oral testimony not objected to and undisputed answers this contention fully; it shows that the carrier

was fully informed as to all the circumstances and the custom of hiring teams and drivers for highway work. When the insurance was contracted for the town officers were assured that the insurance covered all the employees of the town working upon the highway. When asked how the premium was arrived at, the agent of the carrier said that, where a team and driver were hired, they allowed one-third of the pay for the driver and two-thirds for the team, and that the premium was calculated upon that basis. In reply to a direct inquiry, he assured the town that the policy it was procuring covered the men driving teams. The town paid the premium so calculated, received the policy and it was in force at the time the accidental injury was sustained. The carrier intended to insure and did insure the drivers, one of whom was the claimant, of teams hauling gravel to repair the highways in the town of Kinderhook and has received the full consideration therefor. It is estopped by statute from contesting that the employment is hazardous, or that it was carried on for pecuniary gain (Workmen's Compensation Law, § 55) and in fair dealing from denying that its policy covers this claim.

While the appellant does not raise the question whether, because the superintendent of highways is neither an employee nor the agent of the town, the claimant, hired by the superintendent, is not an employee of the town and while we are not called upon necessarily to discuss it (*Shererd* v. *Village of Warsaw*, 209 App. Div. 841), nevertheless our holding in *Youngman* v. *Town of Oneonta* (204 id. 96) is thought to require its consideration. In that case Youngman was the town superintendent and we held that he was not an employee and not covered by the Workmen's Compensation Law. It was not discussed in our opinion whether the policy covered the superintendent, nor whether the superintendent was, at the time he suffered his injuries, engaged in any hazardous work. We think that case is not controlling here. It is settled in this State that a superintendent of highways is not an employee or agent of his town, but is a public officer, for whose negligent acts the town, in the absence of a statute imposing liability, is not liable. But liability of a town may be imposed and regulated by statute. In our view under the statute the claim of a town superintendent may be distinguished from that of one engaged in the construction and maintenance of highways in the town. In the Workmen's Compensation Law the Legislature has authorized the prosecution of a claim against the town and its carrier for the accidental injury to one employed by it in a hazardous employment. The town comes within the definition of employer. (Workmen's Compensation Law, § 2, subd. 3.) "'Employer,'

except when otherwise expressly stated, means a person * * * employing workmen in hazardous employments including the State and a municipal corporation or other political subdivision thereof." In this claim the employment, construction and maintenance of highways, is hazardous; and, to be covered by the act, it is not necessary that the town should be engaged in a trade or business carried on by it for pecuniary gain. (Id. § 3, subd. 1, groups 3, 17;* Id. § 2, subd. 13.) Also every town is, as to its employees, an insured employer under section 50 of the Workmen's Compensation Law, which provides (Subd. 4-a): " A county, city, village, town or other political subdivision of the State may secure compensation to its employees in accordance with subdivision one or subdivision two of this section. If it does not do so, such * * * town * * * shall be deemed to have elected to secure compensation pursuant to subdivision three of this section." And in this connection we call attention to the General Municipal Law (§ 90, as added by Laws of 1916, chap. 478), which in substance requires that every contractor under a contract, to which a municipality or any official thereof is a party, and which is of a character such that the employees engaged thereon are required to be insured by the Workmen's Compensation Law, must procure compensation insurance for the benefit of his employees; which provision of the statute shows the intent that every town shall secure compensation to its employees engaged in hazardous work. Who then are these employees so carefully provided for? The common understanding gives some aid in answering. While it does not appear in the record it is of common knowledge to those acquainted with town affairs that the towns generally are taking out insurance to protect their employees while working on their highways, and the insurance companies are issuing policies to cover these employees and accepting premiums therefor. Indeed, if the provisions cited do not refer to employees working on town highways, it is difficult to conceive what persons it could cover. A town acts uniformly through public officers. The town officers, except superintendent of highways, have no occasion to be engaged in hazardous employment and they generally are not. A town as such does not directly carry on any hazardous business or work. The only sense in which men work for it in a hazardous employment is when they are engaged by a public officer to perform some duty in a town. The maintenance and repair of highways is nowhere put upon the town direct. The town superintendent has " the care and superintendence of the highways;" he is the

---

* See Laws of 1924, chap. 658, since amdg. § 3, subd. 1, group 17.— [REP.

instrument by which men necessary to properly maintain the highways are employed, but only with the approval of the town board, which must approve the wages and, therefore, fixes the wages. He must file a list of names of the persons so employed, with the compensation of each. (Highway Law, § 47, subd. 1, as amd. by Laws of 1915, chap. 322; Id. § 47, subd. 4.) These men are paid by the supervisor from town funds upon an order upon him, in which it is certified by the superintendent that the claimant has performed the work charged for. The superintendent seldom, and then only in minor matters, can act without the approval of the town board, as in making contracts for the construction of highways or bridges (Highway Law, § 48, added by Laws of 1914, chap. 413, as amd. by Laws of 1916, chap. 578); in purchasing highway tools and machinery (Id. § 49, as amd. by Laws of 1922, chap. 294; Id. § 94, subd. 3, as amd. by Laws of 1921, chap. 406\*); in purchasing gravel (Id. § 51); and in determining what highways shall be repaired (Id. § 105, as amd. by Laws of 1920, chap. 561). In each case the town board, by its approval, ratifies the acts of the town superintendent and becomes a party to the contract and subject to its liabilities on the one side. Is it then the town superintendent, who simply negotiates, or the town board, which approves the hiring, which fixes the wages and which pays for the work, that stands in place of the employer? We think, under the Workmen's Compensation Law, the town, not the superintendent, stands in this position in respect to the men working on the town highways. (*Lanigan* v. *Town of Saugerties*, 180 App. Div. 227; affd., 223 N. Y. 685.) As above stated, the insurance contract in this case is valid and the carrier accepted the premium. It had the right and the power to make the contract. We think it should not be allowed to avoid its liability on the ground that the town is not the employer of claimant. Perhaps we should repeat here that the carrier has not taken this objection.

But, while we think there has been established a right to compensation, we think there was error in fixing the amount. The findings state that the weekly wage of Alfred Kittle was twenty-two dollars and twenty-seven cents; the evidence shows that it was twenty-one dollars and sixty cents. The Industrial Board has fixed the rate at thirteen dollars and eighty-five cents, which is not two-thirds of twenty-two dollars and twenty-seven cents, or twenty-one dollars and sixty cents. The referee says in his memorandum: "I am also aware that there may be a serious question

---

\* Since amd. by Laws of 1925, chap. 337.— [REP.

regarding the wage rate. But the wage rate may be later established. At three dollars and sixty cents his compensation would be thirteen dollars and eighty-five cents." It does not appear how this amount was reached. If the referee intended to allow two-thirds of the weekly compensation under section 14, subdivision 1 or 2, the amount would be fourteen dollars and forty cents, and the evidence furnishes no basis for reaching this amount under either subdivision. The claimant had not worked during substantially the whole year immediately preceding his injury in the employment in which he was working at the time of the accident. (Workmen's Compensation Law, § 14, subd. 1.) Nor is there any proof of what was the average daily wage or salary of an employee of the same class, working substantially the whole of such immediately preceding year in the same or a similar employment in the same or a neighboring place. (Id. § 14, subd. 2.) The repair of highways in this climate is a seasonal occupation, at most during six or seven months of the year, and the men employed do not work or receive pay for rainy days. While we would not limit the proof which the claimant may seek to offer on a rehearing, in our view, so far as this record discloses, the compensation could only be calculated under section 14, subdivision 3.

The award should, therefore, be reversed and the claim remitted to take further proof concerning, and make computation of, the average weekly wages of the claimant.

All concur, except H. T. KELLOGG, J., who concurs in reversal and votes for dismissal on the authority of *Youngman* v. *Town of Oneonta* (204 App. Div. 96).

Award reversed and matter remitted to take further proof concerning, and make computation of, the average weekly wages of the claimant, with costs against the State Industrial Board to abide the event.