## ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited, v. MARSHALL, Deputy Commissioner.

### No. 714.

District Court, W. D. Washington, N. D.

May 9, 1930.

Poe, Falknor, Falknor & Emory, of Seattle, Wash., for plaintiffs.

Teats & Teats, of Tacoma, Wash., for intervener William Sommers.

Anthony Savage, U. S. Dist. Atty., and Jeffrey Heiman, Asst. U. S. Dist. Atty., both of Seattle, Wash., for defendant.

NETERER, District Judge.

On August 3, 1927, William Sommers was severely injured by timber falling out of a sling in loading onto the ship. He was hit on the right shoulder, dislocating the right clavicle, "the inner third of the bone being literally smashed," also sustained sprain of the lower back, also a fracture of the sixth

clavicle vertebra which caused injury to the nerves leading to the right arm.

After hearing, compensation order for disability was made by the deputy commissioner on December 12, 1928, under the Longshoremen's and Harbor Workers' Compensation Act, March 4, 1927, title 33 USCA, §§ 901–950. On further hearing, further order was made June 24, 1929, for continuing disability. On October 29 the deputy commissioner found Sommers totally disabled by reason of the injury and awarded him $22.84 per week during that disability or the further order of the deputy commissioner, and that appropriate medical, surgical, and hospital treatment be given. The insurance carrier by this bill of complaint denies total disability, and prays suspension of the order, etc.

It is obvious that the Congress intended that the act be construed liberally in behalf of the injured workers and has created the deputy commissioner a special tribunal not "bound by common law or statutory rules of evidence or by technical or formal rules of procedure" but to "make such investigation or inquiry or conduct such hearing in such manner as to best ascertain the rights of the parties." Title 33 USCA, § 923.

A reading of the evidence taken at the several hearings is conclusive that the findings are not capricious, are supported by evidence. While it is true the doctors testified that the injured is totally incapacitated from following the duties of a longshoreman, or any like occupation where heavy lifting is required and that the disability of his right arm is perhaps 50 to 65 per cent., and that he could perform labor in some other vocation which did not require the lifting or much walking, such as janitor or elevator service. The injured at the time of the injury was 52 years old and had worked at longshoring since 1907, but during the summer time when longshoring was slack he worked in "wheat warehouses," but joined the "local" Longshoremen's Union in 1912, and has "worked night and day since doing that work," never had "trouble" prior to the time of injury. He weighed at the time of injury 200 or more pounds, and at the last hearing he weighed 190 pounds.

Claimant says he can work only about half an hour "because the pain sticks me so bad I have to quit," that he never before had such "trouble."

He has a garden which his "wife and neighbor tend to, * * *" has about forty chickens, he "puts down the straw" and feeds and carries water for them. His boy carries the wheat, "he puts that there for me." He tried to dig potatoes and after digging two pails full had to quit. He "scrubs" the chicken house with a hoe, pulling out the "straw and the dung," in the winter time about once in three weeks, and in the summer time not so often. He complains of "more or less constant and severe pain in the lumbo-sacral" region. Also pain in the right shoulder. He has a heart murmur between the second and third ribs. His back has been X-rayed and "could find no pathology." The doctor says, "I believe this back may be classed as a traumatic neurosis."

The medical-scientific conclusion of the percentage of the physical and/or mental disability, predicated on pathological condition, with relation to certain employments—janitor and elevator service, etc.—must be considered in the light of existing conditions and facts. The claimant might, likewise, pathologically, be classed as physically able to perform the duties of "butler," or, perhaps, a member of a counting room staff. The mere fact that, from a pathological disclosure, there is physical fitness for such service does not take from the actual condition of the claimant as disclosed, as a unit of society, and it is the *right* that the deputy commissioner *must find* from all the conditions that exist.

The traumatic neurosis tends as strongly to disability to actually perform as an actual pathological condition, and this traumatic neurosis is directly the result of the injury and proximately caused by it; and the deputy commissioner, being bound to make such investigation in such manner as to best ascertain the rights of the parties, having concluded, there being evidence to support the conclusion, the court is powerless. It is a "condition and not a theory," as said by a distinguished statesman, that is presented, and this is comprehended in the very purpose of the act.

The order may be modified when condition changes. Title 33, USCA, § 922.

The authorities cited by complainant [United States S., R. & M. Co. v. Evans (C. C. A.) 35 F. (2d) 459; Texas Employers' Ins. Ass'n v. Sheppeard (D. C.) 32 F. (2d) 300; Wellgeng v. Marshall (D. C.) 32 F. (2d) 922] have no application here.

Joyce v. United States Deputy Commissioner (D. C.) 33 F. (2d) 218, is in harmony herewith.

Dismissed.