## GUNTHER v. UNITED STATES EMPLOYEES' COMPENSATION COMMISSION et al.

### No. 5973.

Circuit Court of Appeals, Ninth Circuit.
May 19, 1930.

H. W. Hutton, of San Francisco, Cal., for appellant.

Edwin T. Cooper and Charles T. White, both of San Francisco, Cal., for appellee California Stevedore & Ballast Co.

Before DIETRICH and WILBUR, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an action in equity to review an order of the deputy commissioner for the Thirteenth district under the Act of Congress of March 4, 1927, known as "Longshoremen's and Harbor Workers' Compensation Act." USCA Title 33, c. 18, §§ 901–950. From a decree dismissing the cause plaintiff appeals.

Appellant is the widow of Richard W. Gunther, who was accidentally killed on August 16, 1927, while working in the capacity of a longshoreman or stevedore for the defendant California Stevedore & Ballast Company at the port of San Francisco. Hearings were had before the deputy commissioner upon appellant's application for widow's compensation, and following such hearings an order was made allowing her compensation in the sum of $6.01 per week, and denying her petition for a lump sum settlement. This proceeding was instituted and appeal taken under the provisions of section 921 of the act, supra, authorizing the review of such orders when made "not in accordance with law." It is appellant's contention that the compensation order is not in accordance with law.

The basis upon which the deputy commissioner is required to make determination of the compensation to be allowed is governed by the provisions of section 910 of Title 33, the material portion of which reads:

"Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) If either of the foregoing methods of arriving at the annual average earnings of an injured employee can not reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury."

The deputy commissioner, called as a witness in the court below, testified concerning the making of the compensation order as follows:

"I figured the wages in this case under subdivision (c) of section 10. (Title 33, § 910.) The theory I followed was that Subdivisions (a) and (b) of section 10 should apply where the injured employee worked during substantially the whole of the year;

and Subdivision (c) applies where either Subdivisions (a) or (b) cannot be reasonably or fairly applied. Now, the evidence brought out before me in this case was that Mr. Gunther had worked a certain number of days shown by the record which I have forgotten, the exact number—if I recall it was less than two hundred days out of the year; and he earned during that time $892.00; it seemed to me that if a man worked less than two hundred days out of the 365 of the year, he could not be said to have worked substantially the whole year within the meaning of Subdivisions (a) and (b) of this section; so, applying Subdivision (c), I took the gross earnings shown by the evidence for the whole year as his average yearly earnings, and then took a percentage fixed by the Act for a widow, which, as I recall, was thirty-five per cent., and that gave, or should have given that figure that was fixed in the award. I do not think that there was any evidence before me that he worked at anything else during that period. There was some such evidence offered that he was standing down at the corner of Market Street and the Embarcadero, in this city and county, as all of the stevedores stand every morning, waiting to be called on to go to work. The evidence which I used as a basis of the decision was statements and testimony from the different stevedoring companies in the Port of San Francisco, showing his earnings while working for them during the year. The record should show he was down there waiting to be called on. I did not consider the question as to whether he might or might not have worked, I took the actual earnings for the year as shown by the testimony—the actual earnings for the year—before his death—as the basis for determining the average annual earnings. I understood from the evidence that these men get ninety cents an hour for such time as they work. I did not understand that there was any eight-hour a day as such. I understood that an overtime rate goes into effect wherever a man works over eight hours. If you mean an eight hours is a standard for computing overtime I would say that eight hours were a day's work. If you wish to infer, however, that the actual wages for the year were three hundred and sixty-five times the eight-hour rate a day I would say no. The evidence did not show that."

Of the amount $893.96, taken by the deputy commissioner as decedent's "average annual earnings" for the year preceding his death, $735.75 appeared from the records of appellee corporation as having been paid by it to decedent, and $158.21 as having been paid by one or more other companies engaged in the stevedore business as shown by their books of account. Counsel for appellant contends that the deputy commissioner should not have confined his consideration to these accounts, as they were only evidence of amounts paid by certain employers, and did not negative the receipt of wages from other sources. Appellant at the hearings testified that decedent had been a stevedore for a number of years, during which time they had lived together with an adult son of hers, who was tubercular, and that decedent supported the three; that they had no income other than his earnings; that they paid rent in the sum of $35 per month; that decedent worked steadily, and his earnings were not less than $40 per week. A witness, Otto Witt, testified on behalf of appellant at the hearings that he had known decedent for a number of years, and that they had worked together at different times, but not during all the year preceding the accident; that they both earned practically the same money, and in the year preceding decedent's death he (witness) had earned $2,100. Another witness, E. Schroder, on behalf of appellant, testified at the hearing that he was a gang boss, and that decedent had worked under him; that decedent was what was called a "hustler," had steady employment, and his earnings would average $40 per week. There was also testimony to the effect that sometimes captains of lumber schooners would hire men and pay them directly, of which payments no entries would be made or were available. It was the practice of employees such as decedent to go to certain points or places on or near the water front, where gang bosses would select the men they wanted; and there is testimony to the effect that it was decedent's practice to be on hand daily, ready for such employment.

It is conceded that in cases of this character it is the province of the deputy commissioner to weigh the testimony and determine the credibility of the witnesses, and his conclusions upon such matters are controlling upon the court. It is contended, however, that the evidence in this case is without contradiction, and establishes as a matter of law that decedent was employed substantially the whole of the year immediately preceding his injury, and that his average annual earnings were more than twice the amount so found by the deputy commissioner. We

think it unnecessary to consider this phase of the case, for in our opinion the deputy commissioner erred in holding that compensation was to be determined by the provisions of subdivision (c) of scetion 910, and also in his practical interpretation of subdivision (c).

The provisions of subdivision (b) should have been applied, as, in the language of the statute, those provisions can "reasonably and fairly be applied." At the time of his death and for a long time prior thereto decedent had been following the occupation of a stevedore or longshoreman. Confining the evidence respecting time of employment to that considered by the deputy commissioner, it establishes that decedent had worked at his occupation for at least several months of the year. In such case compensation is not based upon the amount actually received during the time employed as determined by the deputy commissioner, but, as subdivision (b) provides: "His average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment * * * shall have earned in such employment during the days when so employed." Here apparently we have the case of a man ready, able, and willing to work at his calling. It was clearly the purpose of Congress that in case of the accidental injury or death of such an employee during the course of his employment his ability to earn should be the primal basis of determining compensation. Three bases for such a determination were prescribed in the statute. If the employee had worked "substantially the whole of the year," as specified in subdivision (a), his total income was to be taken as the basis of award. If, however, he had not been employed for substantially that length of time, then his earning power as a basis of compensation is to be determined, as provided in subdivision (b), by taking the average daily wage of other employees "of the same class working substantially the whole of such immediately preceding year." Where the award is made under subdivision (c) actual earnings are not controlling, but the conclusion to be arrived at is a sum which "shall reasonably represent the annual earning capacity."

It is clear in this case that the $893.96, taken as the basis for computing appellant's compensation, did not "reasonably represent the annual earning capacity" of the decedent, nor does it represent approximately the amount of wages which "an employee of the same class working substantially the whole of such immediately preceding year * * * shall have earned in such employment during the days when so employed."

An employee for some reason may have been unable to have worked at any employment for all or the greater portion of the year preceding an accident. He may meet with an accident the first day of his employment. In such case his prior lack of earnings or of earning capacity, particularly the reason therefor, while a proper matter to be considered in determining his earning power at the time of the accident, nevertheless, it is that earning power which is the ultimate fact to be determined in the manner prescribed by the statute. The statute in express terms establishes a liberal rule for the determination of the facts. Section 923. It also fixes a limit beyond which "average weekly wages" are not to be taken into account "in computing death benefits." Section 909(e). In these provisions Congress had in view the protection of both the employer and the employee, or the latter's beneficiaries.

The contention that the ruling of the deputy commissioner in denying application for a lump sum settlement was contrary to law is without merit. The only reason offered for such form of settlement was so that appellant could buy a house and save rent. Concerning this application the deputy commissioner found:

"The claimant has not shown sufficient ground at this time to entitle her to a computation of future installments of death benefits to a lump sum; but that her claim to such computation may be renewed upon presentation of a definite plan for use of such sum."

The decree of dismissal is reversed, and the case remanded for further proceedings not inconsistent with this opinion.