## ANDREW F. MAHONY CO. et al. v. MARSHALL, Deputy Com'r, et al.

### No. 781.

District Court, W. D. Washington, N. D.
Jan. 12, 1931.

540

Bogle, Bogle & Gates, Lawrence Bogle, Stanley B. Long, Grosscup & Morrow, and John Ambler, all of Seattle, Wash., for complainants.

Anthony Savage, U. S. Atty., and Jeffrey Heiman, and Cameron Sherwood, Asst. U. S. Attys., all of Seattle, Wash., for Deputy Commissioner.

L. B. Sulgrove, of Tacoma, Wash., for defendant Winkler.

Erskine Wood and Gunther F. Krause, both of Portland, Or., amici curiæ, for waterfront employers.

McCutchen, Olney, Mannon & Greene, Farnham P. Griffiths, and Charles E. Finney, all of San Francisco, Cal., for Waterfront Employers' Union.

I. H. Van Winkle, Atty. Gen., and Thomas G. Ryan, Asst. Atty. Gen., for State Industrial Accident Commission of Oregon.

NETERER, District Judge.

This is an action in equity to review an order of the deputy commissioner for the Fourteenth Compensation District under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950).

At the hearing before the deputy commissioner it was agreed claimant worked 182 days as longshoreman during the preceding year; that his total earnings were $1,266.20, or $24.34 per week for 52 weeks; two-thirds of this amount equals $16.23 per week; this amount was paid.

Claim is made under the act for $25 per week, based on Gunther v. United States Employees', etc., Comm. (C. C. A.) 41 F.(2d) 151, 153. The commissioner found in favor of claimant, among other things, as follows: "That during the said period the claimant earned a total of $1266.20, based on an hourly wage, for work performed by him as a longshoreman; that during said period the claimant worked as a longshoreman on 182 days or parts of days; * * * that M. Diegnan is a workman engaged in the occupation of a longshoreman in the same port which the claimant sustained his injury and is an employee of the same class as the claimant; that during the year immediately preceding said injury, the said M. Diegnan worked as longshoreman 284 days, and, therefore, worked substantially the whole of said year; that said Diegnan earned a total of $2314.45 for such labor, an average of $8.15 per day during the days so employed; that three hundred times such average of $8.15 per day amounts to the sum of $2445.00; that the average annual earnings of the claimant, as determined by subdivision (b) of section 10 of the Act, is $2445.00; that as a result of the injury sustained the claimant was wholly disabled from August 9, 1930, to and including October 17, 1930, and is entitled to ten weeks compensation, $25.00 per week, for such disability; that the disability of claimant continued at the time of the hearing on October 23, 1930; that the employer has paid $178.53 to claimant as compensation."

The court had the benefit of elaborate argument and exhaustive briefs.

It is contended by the complainant that the award is not in harmony with the provisions of the act, supra; that the earnings, based on his wages, as found by the commissioner, were $1,266.20; that the known

earnings are controlled by subdivision (c), section 10, act supra (33 USCA § 910(c), and is the sum of $16.23 per week, which sum has been and is being paid; that the award of the deputy commissioner is arbitrary and capricious in applying subdivision (b) of section 10 (33 USCA § 910(b), fixing the maximum amount allowed by the said act, to wit, $25 per week.

The injured claimant contends that this award is controlled by subdivision (b) and approved by Gunther v. United States Employees' etc., Comm. et al., supra.

I do not so read the opinion in the Gunther Case. While some broadly stated phrases are employed, the context clearly shows that the injured longshoreman had earned during the year immediately preceding his death approximately the same amount as other employees in the same grade and class, not less than $40 per week; that decedent was what was called a "hustler," and had steady employment. There was testimony that some captains of lumber schooners would hire men and pay them directly, of which payments no entries would be made, or were available. It was the practice of employees, such as decedent, to go to certain points or places on any waterfront where gang bosses would select the men they wanted; and there is testimony to the effect that it was decedent's practice to be on hand daily ready for and get such employment. The deputy commissioner found and predicated his award upon the earnings disclosed by the records of the employment agency, excluding other disclosed earnings, and while the court did say "his conclusions upon such matters are controlling upon the court," the court stated that it was of opinion "the deputy commissioner erred in holding that compensation was to be determined by the provisions of subdivision (c) of section 910, and also in his practical interpretation of subdivision (c)." And further stated, *"It is clear in this case that the .$893.96,* taken as the basis for computing appellant's compensation, did not *'reasonably* represent the *annual earning capacity'* of the decedent," having referred to the testimony as to earnings, and, in fact, did not adopt in its decision the findings of the commissioner, but stated, "nor does it represent approximately the amount of wages which 'an employee of the same class working substantially the whole of such immediately preceding year * * * shall have earned in such employment during the days when so employed' "—it being shown that the employee did work at other places and did earn sub-stantially $40 per week, the amount suggested by the court as a basis for an award.

■ Each case must rest upon its own facts, and the standard taken must be of *"the same class within the employment."* This is emphasized by the language employed by the court, in the Gunther Case, supra: "Where the award is made under subdivision (c) actual earnings are not controlling, but the conclusion to be arrived at is a sum which 'shall reasonably represent the annual earning capacity.' " And from the opinion is shown testimony of earnings equal to the earnings of other employees in the same class and grade, and could be within either subdivision (b) or (c), section 10, act supra.

Again the court said, actual earnings and comparative earnings disclosed error in award:

"An employee for some reason may have been unable to have worked at any employment for all or the greater portion of the year preceding an accident. He may meet with an accident the first day of his employment. In such case his prior lack of earnings or of earning capacity, particularly the reason therefor, while a proper matter to be considered in determining his earning power at the time of the accident, nevertheless, it is that earning power which is the ultimate fact to be determined in the manner prescribed by the statute. The statute in express terms establishes a liberal rule for the determination of the facts. Section 923. It also fixes a limit beyond which 'average weekly wages' are not to be taken into account 'in computing death benefits.' Section 909 (e). In these provisions Congress had in view the protection of *both* the *employer* and the *employee,* or the latter's *beneficiaries."* (Italics supplied.)

And further said:

"It was clearly the purpose of Congress that in case of the accidental injury or death of such an employee during the course of his employment *his ability to earn should be the primal basis of determining compensation."* (Italics supplied.)

The court no doubt had in mind that under the "due process" and "equal protection" clause of the Constitution the Congress had a wide discretion in classifying, within a reasonable basis (Mondou v. N. Y., N. H. & H. Ry. Co., 223 U. S. 51, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. [N. S.] 44) in the public interest, compensation for injury in industrial employment, and require contribution arising from accidental injury to em-

ployees, irrespective of negligence (Mountain Timber Co. v. Washington, 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642), but arbitrary and unreasonable charges, or fundamentally unjust methods adapted to produce unfair results, could not be sustained (Arizona Copper Co. v. Hammer, 250 U. S. 400, 39 S. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537). But compensation for industrial accidents to employees or dependents in accordance with prescribed scale, gauged upon previous wage and fitness, willingness, and opportunity to work, may provide that the loss of earning power sustained by employees, shall be charged against the industry for impairment or destruction of earning power, predicated upon reasonable, fair deduction, but condemns an attempted charge without a reasonable basis—opportunity to work, readiness, fitness, and willingness,— and therefore purely arbitrary. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160.

The court, likewise, no doubt, had in view the origin of the Compensation Act, effective July 1, 1927, adopted largely from the Workmen's Compensation Act of New York, 1914 (chapter 41), and that construction of the law by the court of the state should be considered as adopted with the text they expounded.

While the act was under consideration before the Congress, a member from New York said:

"* * * In 1914 we passed a Compensation Law which has served as a model for the laws of other states, and is the basis of the law we now have under consideration." 68 Congressional Record, 5412.

Another member of Congress said:

"It has been considered thoroughly in every particular. We have had the benefit of expert advice, and have examined all the laws existing in other states on this subject." 68 Congressional Record, 5410.

The courts have uniformly, in passing on an act adopted from another state, adopted the construction placed upon the act by that state. Hamilton v. Russell, 5 U. S. (1 Cranch) 309, 2 L. Ed. 118. Chief Justice Marshall, in Tucker v. Oxley, 9 U. S. (5 Cranch) 34, at page 42, 3 L. Ed. 29, said:

"As the bankrupt law of the United States, so far as respects this case, is almost, if not completely, copied from that of England, the decisions which have been made on that law by the English judges may be con-

sidered as having been adopted with the text they expounded."

Justice Brown, in Interstate Commerce Commission v. B. & O. Ry. Co., 145 U. S. 263, 12 S. Ct. 844, 850, 36 L. Ed. 699, said:

"* * * So far as relates to the question of 'undue preference,' it may be presumed that Congress, in adopting the language of the English act, had in mind the construction given to these words by the English courts, and intended to incorporate them into the statute."

Justice Holmes, in Sexton v. Dreyfus, 219 U. S. 339, at page 344, 31 S. Ct. 256, 257, 55 L. Ed. 244, said:

"The established construction of a law goes with the words when they are copied by another state."

Judge Gilbert in Welsh v. Barber Asphalt Paving Co. (C. C. A.) 167 F. 465, at page 472, said:

"When it was adopted in Oregon, the Supreme Court of the state of Washington had already given the statute the construction which we have given it. The construction so settled by the highest court of the state from which the statute was taken became a part of the law when it was adopted in Oregon, and is, we think, binding upon a federal court."

See, also, Texas Employers' Ins. Ass'n v. Sheppeard (D. C.) 32 F.(2d) 300.

In construing the New York act, prior to the adoption of the act in issue, the New York court, in Littler v. Geo. A. Fuller Co., 223 N. Y. 369, 119 N. E. 554, 555, said:

"Three hundred days' work in the year is a standard of steady employment. 'The average weekly wages of an employee shall be one fifty-second part of his average annual earnings.' Section 14, subd. 4. The award should not exceed two-thirds of the earning capacity. Average annual earnings are computed under subdivisions 1, 2, or 3 of section 14, as the case requires. If the nature of the employment does not permit steady work during substantially the whole of the year the annual earning capacity of the injured employee in the employment is the proper basis of compensation. Section 14, subd. 3. The true test is this: What were the average weekly earnings, regard being had to the known and recognized incidents of the employment, including the element of discontinuousness?"

In Prentice v. N. Y. State Railways, 181 App. Div. 144, 168 N. Y. S. 55, 56, subdivisions 1 and 2 of the section provided that in

cases included within such subdivision the average annual earnings shall consist of 300 times the average daily wage or salary. The court said:

"The number 300, used in those subdivisions, is not an arbitrary selection, but was evidently selected because it bears an approximately close relation to the number of working days in a year, Sundays and holidays excluded. Manifestly, where an employee works seven days a week for substantially an entire year, the method of determining his average annual earnings, indicated in either subdivision 1 or 2, would be an injustice to him, just as much as it would be an injustice to the employer to apply those subdivisions to a case where the injured employee has worked less than six days a week for a substantial period of time. The claim here falls more appropriately within subdivision 3. * * *"

In Remo v. Skenandoa Cotton Co., 189 App. Div. 367, 179 N. Y. S. 46, 47, the court said:

"If the nature of the employment does not permit steady work during substantially the whole of the year, the annual earning capacity of the injured employee in the employment is the proper basis of compensation. * * * The true test is this: What were the average weekly earnings, regard being had to the known and recognized incidents of the employment, including the element of discontinuousness?'"

See, also, Rooney v. Great Lakes Transit Corporation, 191 App. Div. 10, 180 N. Y. S. 652, 653; Roskie v. Amsterdam Yarn Mills, 191 App. Div. 649, 181 N. Y. S. 891; Fox v. Bachnor Bros., 191 App. Div. 706, 182 N. Y. S. 416; Merrill v. Pickett, 203 App. Div. 268, 196 N. Y. S. 746; McDonald v. Burden Iron Co., 206 App. Div. 571, 201 N. Y. S. 720; Gruber v. Kramer Amusement Corp., 207 App. Div. 564, 202 N. Y. S. 413; Mackin v. Press Publishing Co., 209 App. Div. 252, 204 N. Y. S. 692; Testo v. Burden Iron Co., 211 App. Div. 219, 207 N. Y. S. 454; Kittle v. Town of Kinderhook, 214 App. Div. 345, 212 N. Y. S. 410; Belliamo v. Marlin-Rockwell Corp., 215 App. Div. 845, 213 N. Y. S. 85; Kapler v. Camp Taghconic, Inc., 215 App. Div. 51, 213 N. Y. S. 160.

The Supreme Court of Michigan in construing a like act, prior to the adoption of the act in issue, in Andrejwski v. Wolverine Coal Co., 182 Mich. 298, 148 N. W. 684, 686, Ann. Cas. 1916D, 724, said, with relation to section 11 (practically the same as section 14 of the New York law, and section 10 of the Longshoremen's Act):

"The question in the instant case for the court, upon the facts presented by this record, is to determine under the provisions of which of the four classifications of this statute the average annual earnings of this employee must be ascertained. It is clear that the first, second, and third classes of cases relate to employments which continue during substantially the entire calendar year. About the first there is no question. The same initial language used in the second [a] and third [b] classifications indicates that the Legislature still had in mind employments at which employees worked substantially the whole of the year immediately preceding an injury. The employment in which the injured employee in the instant case was engaged at the time of his injury was not an employment of that character. It was not an employment in an industry which continued operations during substantially the entire year. The record shows that this is the case, not only in the Saginaw valley district, but everywhere in the coal mining industry. * * *

"We must therefore conclude that it comes within the fourth classification. * * *"

The Supreme Court of California (1917), in Mahaffey v. Industrial Acc. Comm., 176 Cal. 711, 171 P. 298, 299, on an identical provision with section 10, supra, said:

"Both subdivisions 1 and 2 contemplate a kind of employment which is permanent and steady, and which, for that reason, affords to an employee the possibility, at least, of earning annually an amount measured by the number of working days in a year, estimated and fixed by the act at 300. Where this kind of employment is not shown to exist, the case falls within subdivision 3, under which the annual earnings are to be taken as the sum which will 'reasonably represent the average annual earning capacity.' * * *

"Under this subdivision, the amount of annual earnings is not reached by multiplying the employee's daily earnings by any arbitrary figure, but by ascertaining from the evidence what his earning capacity in fact was. * * *"

The Supreme Court of Utah, in Uintah Power & Light Co. v. Indr. Comm., 56 Utah, 169, 189 P. 875, approved the "300 rule" of New York, Michigan, and California. See, also, State Road Comm. v. Industrial Comm., 56 Utah, 252, 190 P. 554.

In Utah Fuel Co. v. Ind. Comm., 59 Utah, 46, 201 P. 1034, 1035, the employee worked steadily during four months in the winter time and three to five days a week during the spring and fall, and in the summer somewhat less—an average of 222 days a year. "The employment," the court said, "is necessarily irregular and intermittent." And further: "* * * The basis adopted by the Commission is unfair because it assumes that Parry could have worked 300 days in the year while under the undisputed evidence he could only have worked 222 days. * * *" See, also, Howard v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 292 S. W. 529, on the same issue; Petroleum Casualty Co. v. Williams (Tex. Com. App.) 15 S.W.(2d) 553. The 300-day standard cuts both ways; it cannot be applied to the prejudice of an *employee* who has averaged substantially more than 300 days, nor to the prejudice of an employer, where the service is substantially less.

In this case it is shown that the long-shoring industry is of irregular character. The testimony shows that the reason why many of these workmen do not earn higher total wages during the year is *lack of employment as to many of them.* The irregular character of employment has been judicially recognized by the English courts. Perry v. Wright, 1 K. B. 441. In that case Lord Justice Fletcher Moulton said, among other things:

"The workman was a casual dock la-bourer, and there is no dispute as to the rate of payment which such workmen obtain during the time that they are employed. But the employment is a casual one. The men go to the stand and are taken on for a job, and when that job is over they are discharged, and remain idle for a time or get engaged by some other employer who wants workmen."

See, also, Snell v. Mayor of Bristol, 2 K. B. 291; Cue v. Port of London Authority, 3 K. B. 892.

In considering this issue, consideration should be given to departmental construction. This section has always been construed by the Department, in this division at least, predicated upon the average weekly earning capacity of the injured, and it was so considered and conformed to and a weekly wage paid to the injured upon a basis of his earnings for *substantially a whole year immediately preceding the injury;* and found by the deputy commissioner to be, under subsection (c), section 10, act supra, $16.23 per week,

and has been paid until the pending application was made, and upon which the review was predicated.

It is obvious that the deputy commissioner erred in applying to this case subsection (b), the injured employee not having *worked* substantially the whole year, although engaged in the same employment for at least three years and availed himself of every opportunity afforded, and whose annual earnings are known, and using as a basis the average of the "highest earnings man" in a "similar class," who worked the largest number of working hours and days of the preceding year, and paying the injured man more than he earned before injury, on a basis of more than the "highest earnings man" earned, when section 908, 33 USCA, provides that compensation shall be based on "66⅔ per centum of the average weekly wages." If claimant had been recently engaged as longshoreman and his previous employment had been in another class of work and wage scale, his annual earnings in the instant work could only be determined by the earnings of "other employees" in the same or similar work and class as a basis, and the rule would apply, and the question then would be whether the *"highest earnings man,"* or the *average* earnings "of *other* employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality," shall be considered. And in such determination wide discretionary powers are given the deputy commissioner. Zurich Gen. Acc. & Liability Ins. Co. v. Marshall, 42 F.(2d) 1010.

While the finding is that the claimant was subject to call, ready and willing and able to work, but that he was not called, the record shows that work was *necessarily discontinuous, dependent* upon certain *conditions indeterminable* in *advance,* because of *lack of employment,* and, especially from the middle of May until the fore part of August the *work was slack.* This, from the record, appears to be a *fixed condition.* It is an *incident* of this employment, of which the *claimant* was *advised,* and the *claimant* took the *risk* of the *recognized incidents* as to the *work* in *normal conditions,* and consideration must be given to that *normal equation.* This is not an employment of "clock" or "whistle," but of *recognized intermittence,* with the element of *discontinuousness,* that claimant was paid only when he worked, and his wages when he worked must compensate for the time he did not work, and, if injured, shall be paid on a

basis of 66⅔ per centum of his "annual average earnings." It could not have been the purpose or intent of the Congress, in view of the construction placed upon the act by the court of states from which the act in issue was largely taken, and the "due process" and "equal protection" clauses of the Constitution and the provisions of section 10, subdivisions (a), (b) and (c), 33 USCA § 910 (a–c), to apply the "300 rule" to this claimant upon the record in this case, when the average earning capacity is known, no interruptions of earnings being occasioned by illness or injury. These subdivisions are merely rules by which the "annual earning capacity" may be gauged when actual earnings in normal conditions cannot be computed. The readiness, willingness, and fitness of the claimant for work does not require the employer to *insure work*. These conditions the claimant voluntarily accepted with the wage as satisfactory when well, and, when injured, may not be paid under the provisions of the act more than he earned.

█ Earning capacity means fitness and readiness and willingness to work, considered in connection with *opportunity* to work; and *fitness* and *opportunity* must go hand in hand. Claimant was ready and fit, and risk of opportunity was his. And to classify the claimant, of average annual earning capacity of $1,266.20 in the same work, under subdivision (b) on a basis of $2,445, is obviously not within the intent of the act. No abnormal condition or circumstance appearing, the nature and character of the work being well known to claimant and he having assumed the risk of "full time," his recovery must be based on his "previous annual average earnings," upon the findings in this case, which are binding on the court.

The facts in this case, I think, are clearly distinguished from the Gunther Case, supra; if not, I welcome reversal. And the conclusions herein do not derogate from Zurich, etc., v. Marshall, etc., supra.

To distinguish the cases cited by defendant would unduly extend this opinion. I do not think they have application, or take from the conclusion announced.

The motion to dismiss is denied, and the award is enjoined, except as to $16.23 per week.

An order may, on notice, be presented.