**TODD DRY DOCKS, Inc., et al. (PITTSON, Intervener) v. MARSHAL, Deputy Com'r.**

No. 700.

District Court, W. D. Washington, N. D.
Jan. 15, 1931.

The Deputy Commissioner found that during the time in issue the deceased was employed from March 13 to March 21, inclusive, except one day, upon the navigable waters of the United States; "that while so employed the said Edward Pittson sustained an accidental injury arising out of and occurring in the course of his employment as a pipe fitter, and resulting in his death on March 28, 1929."

"On March 11, 1929, the steamship 'President Madison' arrived from the Orient at Smith's Cove at Seattle * * * with a number of Filipino steerage passengers suffering from cerebro-spinal meningitis; that of the said Filipino steerage passengers so suffering, one had died at sea prior to the arrival of said steamship * * * another died in a Seattle hospital, and several others died at a quarantine station at Diamond Head after arrival of said steamship * * *;

"That the said Edward Pittson, in connection with his duties as pipe fitter, boarded said steamship on March 11, 1929, for the purpose of taking measurements of certain toilet piping above the main deck of said steamship and also went to different places on said steamship with reference to other smaller items of contemplated repairs and remodeling; that at that time the said passengers suffering from cerebro-spinal meningitis had not been removed from said steamship; that said steamship was fumigated the first or second day thereafter; that after being fumigated the said steamship was placed in the dry dock of the employer and the said Edward Pittson was thereafter continuously employed on said steamship as a pipe fitter until and including March 21, 1929; that on March 21, 1929, the said Edward Pittson was employed in the steerage quarters of said steamship replacing railings and working on the fire lines; that while so employed on said steamship the said Edward Pittson acquired the germs of cerebro-spinal meningitis, which resulted in his death on March 28, 1929; that the degree of exposure and the manner of acquiring said cerebro-spinal meningitis were such as to constitute an accidental injury and death arising out of and incidental to the employment of the said Edward Pittson * * *"; and made an award in conformity to the Longshoremen's Act, supra.

The complainants contend that the affliction does not constitute an accidental injury or death within the meaning of the Longshoremen's Act.

The testimony shows that cerebro-spinal meningitis is an acute infection due to a specific organism, and inflames the membrane covering the brain, and that all classes or conditions of people are susceptible. The germ is communicated by a "carrier" or proximity of afflicted person. The germ is "coughed or sneezed out," "coughing or sneezing might atomize the surroundings." It is in epidemic form, or sporadic. The epidemic form is more virulent.

"Q. The disease develops very rapidly? A. Oh, tremendously rapidly," said the doctor.

The doctor was asked by the Deputy Commissioner:

"Doctor, you heard the testimony concerning the work the deceased was doing on board this ship? A. Yes.

"Q. Particularly the testimony referring to the places he was working with reference to the part of the ship in which were these Filipinos and among whom were cases of spinal meningitis. Having heard this testimony, do you regard—would you regard the exposure of the deceased to this disease as being a greater exposure than the common exposure of citizens here generally? A. Yes, I would. * * *

"Q. If there were spinal meningitis cases of the epidemic type in the steerage, would you say that there would be danger of contracting the disease in going anywhere near that steerage? A. Yes, I would say that it was a contact with the steerage.

"Q. If they were working right over the steerage—back, right over the steerage and the steerage right under them, would that be close enough contact? A. Oh, yes. For instance, a person on the lower deck there might be a carrier, or an individual who is apt to come down, and they might be coughing and spluttering and sneezing, and so on, and in that condition practically all sputum being carried in the air could be wafted up in the air immediately above."

The evidence shows that deceased was immediately over the steerage where the afflicted passengers were.

The doctor also testified in response to a question whether in his opinion the spinal meningitis on the ship was the epidemic type, said: "At least I would think so, inasmuch as there was an epidemic on that ship. I would assume that it came from that source."

Another doctor called by complainants at a subsequent and further hearing was interrogated:

"Q. I understand that Dr. Robertson only testified according to the septic theory. The natural· habitat of this organism that causes spinal meningitis is on the mucous membrane and on the nasal passages and transmitted by the fingers, but that its natural habitat is through and usually takes effect on the mucous membrane of the nose, —transmitted from one person to another. That is the accepted theory, medically? A. Yes, that is the accepted theory. Of course, immediately after a person has been exposed he may develop respiratory infection from the lungs."

There is testimony that the deceased, immediately following his employment, was very tired, which increased, and he became bedfast on the 26th, and died on the 28th.

J. Speed Smith and Henry Elliott, Jr., both of Seattle, Wash., for complainant.

Anthony Savage, U. S. Atty., and Jeffrey Heiman, Asst. U. S. Atty., both of Seattle, Wash., for defendant.

James C. McKnight, of Seattle, Wash., for intervening claimant.

NETERER, District Judge (after stating the facts as above).

█ The findings of the Deputy Commissioner appear to be fully sustained by rational and natural inferences from conceded facts, and are conclusive upon the court. Grays Harbor Stevedore Co. v. Marshall (D. C.) 36 F.(2d) 814; Gunther v. United States Compensation Com. (C. C. A.) 41 F.(2d) 151; Zurich Gen. Acc. & Liability Ins. Co. v. Marshall (D. C.) 42 F.(2d) 1010. .

Paragraph (2), section 902, title 33, US CA: "The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or *infection as arises naturally out of such employment* or as naturally or unavoidably results from such accidental injury. * * *" (Italics supplied.)

█ The deceased employee died from an infectious disease that arose naturally out of his employment. "An infectious disease presupposes a cause acting by hidden influences * * * or through the pollution of * * * the atmosphere. * * *" Grayson v. Lynch, 163 U. S. 468, at page 477, 16 S. Ct. 1064, 1068, 41 L. Ed. 230. That deceased came to his death through hidden influences of the cerebro-spinal meningitis or through the pollution of the atmosphere by the infected persons on steerage, coughing and sneezing, vaporizing the sputum carrying the germs, polluted the atmosphere, which contacted the delicate mucous membrane of the employee and caused his death, is established.

█ While the statute appears broader than some state statutes, it does appear under the findings and evidence that the award is within the "accidental injury" phase, as well. No doubt, if the body of the deceased had been penetrated by shots from the accidental discharge of a shotgun on the steerage, from the effects of which he lingered and died of blood poisoning, an award would be sustained. By the same token, the discharge of infectious germs by coughing or sneezing on the steerage, some of which penetrated the mucuous membrane of the employee, resulting in his speedy death, resulted in accidental injury. In the one the shot penetrated the muscles of the body, and in the other the germ penetrated the mucous membrane.

The Appellate Court of Indiana, in U. P. B. Co. v. Lewis, 65 Ind. App. 356, 117 N. E. 276, at page 278, said: " * * * Any disease, of which such exposure is known to be the cause, may properly be said * * * to constitute a personal injury by accident, and to come within the provisions of the Workmen's Compensation Act of this state."

The Supreme Court of California, in Engels Copper Mining Co. v. Industrial Accident Com., 183 Cal. 714, 192 P. 845, 846, 11 A. L. R. 785, says: "It is also true that it cannot be said from the facts of the case that it is certain that Rebstock contracted the disease [influenza] because of his exceptional exposure. * * * It is, of course, true that he might have acquired the disease in some other manner, but that he actually did so would seem to be quite improbable. * * * All that is required is that degree of certainty upon which men may reasonably act, and by which their affairs may reasonably be determined."

See, also, City·and County of San Francisco v. Industrial Accident Com., 183 Cal. 273, 191 P. 26; Pattiani v. State Industrial Accident Com., 199 Cal. 596, 250 P. 864, 49 A. L. R. 446.

The Supreme Court of Michigan, in Dove v. Alpena Hide & Leather Company, 198 Mich. 132, 164 N. W. 253, 254, held where death was caused by inhaling septic germs, causing infection of the throat, compensable, and said: "Counsel inquire where the ac-

cident is which led to his death. The accidental feature of the case is that by chance the septic germ or germs were taken up by his respiratory organs and carried into his system, an occurrence which the testimony shows probably did happen, but which was unusual in the work at which he was engaged."

In Blaess v. Dolph, 195 Mich. 137, 161 N. W. 885, 886, the same court said: "We are of the opinion that an inference favorable to the claimant can be arrived at from the evidence in the case, without indulging in any guess or speculation. Germs cannot be traced in their individual wanderings, like persons. No one ever saw a germ go from a source of infection to its victim's body. Means and sources of infection are, as a general rule, based on observed conditions."

See, also, Frankamp v. Fordney Hotel et al., 222 Mich. 525, 193 N. W. 204.

A number of cases are cited by the complainant from state courts upon the state compensation laws. An examination of these cases, however, shows that the compensation laws of the several states are more restricted than the act in issue.

In Connelly v. Hunt Furniture Co., 240 N. Y. 83, 147 N. E. 366, 39 A. L. R. 867, the Court of Appeals of New York, at page 366 of 147 N. E. says: " ' "Injury" and "personal injury" mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom.' Workmen's Compensation Law (Consol. Laws, c. 67) § 2, subd. 7." See Gray v. Semet-Solvay Co., 231 N. Y. 518, 132 N. E. 870. To the same effect is Richardson v. Greenberg, 188 App. Div. 248, 176 N. Y. S. 651. The infection must result from the previous injury, whereas, by the act in issue, it must "arise naturally out of such employment." See, also, Hernon v. Holahan, 182 App. Div. 126, 169 N. Y. S. 705; Campbell v. Clausen-Flanagan, 183 App. Div. 499, 171 N. Y. S. 522.

In Hendrickson v. Continental Fibre Co., 3 W. W. Harr. (Del.) 304, 136 A. 375, the Superior Court of Delaware held occupational disease not compensable as "injury" by "accident," defined as "violence to physical structure of body." Rev. Code Del. 1915, §§ 3193a, 3193d, 3193f(b), as added by 29 Del. Laws c. 233. At page 377 of 136 A., the court said: "We are clearly of the opinion that the only diseases which are compensable under our Workmen's Compensation Act are diseases which arise from or can be re-ferred to an antecedent violence or application of force of some nature to the physical structure of the body," and confined itself to consideration of "injury sustained by accident" and said: "Now, the word 'accident' is not easy of comprehensive definition. Courts have differed as to its meaning dependent upon the context of particular statutes and a distinction is clearly drawn between an 'accidental injury' and an injury 'by accident' " (citing Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A. L. R. 363.

In Industrial Com. v. Cross et al., 104 Ohio St. 561, 136 N. E. 283, the Supreme Court of Ohio held the term "injury" as used in the Workmen's Compensation Act not to include diseases which are contracted, as distinguished from diseases which are occasioned by or follow as a result of physical injury. The Ohio statute defined "injury" by "accident" as violence to physical structure of the body. See, also, Ind. Comm. v. Rice, 26 Ohio App. 497, 160 N. E. 484; Ind. Comm. v. Polcen, 121 Ohio St. 377, 169 N. E. 305.

In Peru Plow & Wheel Co. v. Industrial Comm. et al., 311 Ill. 216, 142 N. E. 546, the Supreme Court of Illinois held "accident" and "accidental injury" to be within the Compensation Act, but "occupational disease" not compensable as accident, and said, in effect, that accident, as contemplated by the Compensation Act, is distinguished from an occupational disease, in that it arises from a definite event, the date of which can be fixed with certainty, but which cannot be so fixed in the case of occupational diseases.

In Lerner et al. v. Rump Bros. et al., 241 N. Y. 153, 149 N. E. 334, 41 A. L. R. 1122, the New York Court of Appeals distinguished between accidental injury and disease, but held that disease may be an "accidental injury." At page 335 of 149 N. E., the court said: "The English act refers in terms to disease which is 'a personal injury by accident.' The English courts have, perhaps for that reason, found it feasible to apply the rule: 'Whenever the causal connection between occurrence and result be established' the principle of compensation should prevail, but it has been applied only when the occurrence was out of the ordinary, and the result, although not the natural result of exposure, might with little difficulty be linked to the occurrence." See, also, Scheerens v. Edwards & Sons, 133 Misc. Rep. 616, 232

N. Y. S. 557; O'Dell v. A. E. P. Co., 223 N. Y. 686, 119 N. E. 1063.

In the instant case, not only does the act cover "infection as arises naturally. out of such employment," and the connection between occurrence and result is abundantly established, but, also, the accident in issue was a definite event of fixed date and place.

In Sullivan Mining Co. v. Aschenbach (C. C. A.) 33 F.(2d) 1, the court held (opinion by Judge Dietrich), under the Workmen's Compensation Law of Idaho permitting compensation for accidental injury, it is not necessary that injury result from sudden or violent cause or that the cause be accidental or unexpected, but injury is accidental when it unexpectedly results from the operation of known and usual causes.

The award is approved. An order of dismissal may be presented, on notice.